Everett J. Cygal (*pro hac vice forthcoming*)
Daniel J. Schufreider (*pro hac vice forthcoming*)
**ARENTFOX SCHIFF LLP**
233 South Wacker Drive, Suite 7300
Chicago, IL 60606
Telephone: 312.258.5500
Facsimile: 312.258.5600
everett.cygal@afslaw.com
daniel.schufreider@afslaw.com

Aram Ordubegian (SBN 185142)
Christopher K.S. Wong (SBN 308048)
**ARENTFOX SCHIFF LLP**
555 South Flower Street, 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401
aram.ordubegian@afslaw.com
christopher.wong@afslaw.com

Counsel for The Catholic Mutual Relief Society of America and Catholic Relief Insurance Company

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO DIVISION**

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC BISHOP OF SAN DIEGO, a California Corporation Sole,<br><br>Debtor and Debtor-In-Possession. | Case No. '26CV5985 CAB JLB<br><br>**CATHOLIC MUTUAL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO FIX VENUE UNDER 28 U.S.C. §§ 157(b)(5) AND 1334(b) AND TO REFER CLAIM OBJECTIONS TO BANKRUPTCY COURT FOR PROPOSED FINDINGS AND CONCLUSIONS**<br><br>(Related Bankruptcy Case No. 24-02202-CL11, Hon. Christopher B. Latham)<br><br>Date: To Be Determined<br>Time: To Be Determined |

# TABLE OF CONTENTS

**Page**


Preliminary Statement ........ 6

Background ........ 8

Argument ........ 10

I. This Court Has Jurisdiction Over Bankruptcy Personal Injury Claims. ........ 10

II. This Court Should Transfer to Itself the Category 3 and Category 10 Objected-to Claims and Underlying State Court Actions, and Refer Them to the Bankruptcy Court for Proposed Findings and Conclusions. ........ 13

III. This Court Has Jurisdiction Over the State Court Actions, Including Claims Against the Debtor and its Nondebtor Co-defendants. ........ 15

Conclusion ........ 18

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ... 7, 13, 14

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ... 16

*In re Chateaugay Corp.*,
111 B.R. 67 (Bankr. S.D.N.Y. 1990), *aff'd in relevant part and rev'd on other grounds*, 130 B.R. 403 (S.D.N.Y. 1991) ... 9, 11

*In re Dow Corning Corp.*,
215 B.R. 346 (Bankr. E.D. Mich.) ... 11

*In re Dow Corning Corp.*,
86 F.3d 482 (6th Cir. 1996) ... 14, 16

*In re Fietz*,
852 F.2d 455 (9th Cir. 1988) ... 16

*In re G-I Holdings, Inc.*,
323 B.R. 583 (Bankr. D.N.J. 2005) ... 11

*In re Marcus Hook Dev. Park, Inc.*,
943 F.2d 261 (3d Cir. 1991) ... 16, 17

*In re Metabolife Int'l, Inc.*,
No. 05CV1802-IEG(RBB), 2005 WL 8173410 (S.D. Cal. Nov. 3, 2005) ... 14, 16

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
496 B.R. 256 (D. Mass. 2013) ... 16

*In re Pac. Gas & Elec. Co.*,
279 B.R. 561 (Bankr. N.D. Cal. 2002) ... 9, 11

*In re Pan Am Corp.*,
16 F.3d 513 (2d Cir. 1994) ... 7, 13

*In re Pan Am Corp.*,
950 F.2d 839 (2d Cir. 1991) ........ 7, 13

*In re Robert Plan Corp.*,
777 F.3d 594 (2d Cir. 2015) ........ 16

*In re Roman Cath. Diocese of Rockville Ctr.*,
650 B.R. 765 (Bankr. S.D.N.Y. 2023) ........ 11

*In re Sansom*,
No. 24-61446, 2025 WL 2382258 (Bankr. N.D. Ohio Aug. 15, 2025), *report and recommendation adopted sub nom. Sansom v. Tucker*, No. 5:25MC36, 2025 WL 3023531 (N.D. Ohio Oct. 29, 2025) ........ 12

*Stern v. Marshall*,
564 U.S. 462 (2011) ........ 12

*T.H. v. Novartis Pharms. Corp.*,
4 Cal. 5th 145 (2017) ........ 18

*In re: The Roman Catholic Diocese of Albany, New York*,
No. 1:25-CV-01570 (BKS), 2026 WL 2923067 (N.D.N.Y. Sept. 29, 2026) ........ 8

*In re Triad Grp., Inc.*,
No. 13-C-1307, 2014 WL 580778 (E.D. Wis. Feb. 14, 2014) ........ 16

*Truck Ins. Exch. v. Kaiser Gypsum Co.*,
602 U.S. 268 (2024) ........ 8

*In re U.S. Lines, Inc.*,
216 F.3d 228 (2d Cir. 2000) ........ 13

*In re UAL Corp.*,
310 B.R. 373 (Bankr. N.D. Ill. 2004) ........ 11

*In re Wood*,
825 F.2d 90 (5th Cir. 1987) ........ 16

**Statutes**

11 U.S.C. § 1109(b) ........ 8

28 U.S.C. § 157(a) ........ 10

28 U.S.C. § 157(b)(1) .......... 8, 10

28 U.S.C. § 157(b)(5) .......... *passim*

28 U.S.C. § 157(c)(1) .......... *passim*

28 U.S.C. § 1334(b) .......... *passim*

Cal. C.C.P. § 340.1 .......... 8

Cal. Corp. Code § 10002 .......... 6

**Other Authorities**

Fed. R. Bankr. P. 9019(a) .......... 9

Fed. R. Bankr. P. 9033 .......... 15

S.D. Cal. General Order 312-E .......... *passim*

United States Constitution Article III .......... 10, 12

The Catholic Mutual Relief Society of America and Catholic Relief Insurance Company (together, "Catholic Mutual"), hereby submit this Memorandum of Points and Authorities in support of their motion under 28 U.S.C. §§ 157(b)(5) and 1334(b) ("Motion") for the Court to take jurisdiction of certain cases filed in California state court and the related proofs of claim subsequently asserted in bankruptcy proceedings in this District (Bankr. S.D. Cal. No. 24-02202-CL11), and to refer the pending objections to these claims back to the bankruptcy court for proposed findings and conclusions, in accordance with 28 U.S.C. § 157(c)(1) and S.D. Cal. General Order 312-E.

## Preliminary Statement

The Roman Catholic Bishop of San Diego ("Diocese")[1] and related parties are defendants in numerous lawsuits alleging acts of sexual abuse and misconduct committed by individuals affiliated with the Diocese decades ago. These lawsuits were filed in the wake of California's amendment of the limitation statute for such claims, effective January 1, 2020, which created a three-year window for alleged victims of childhood sexual abuse to bring civil actions for previously time-barred claims. By the time that window closed on December 31, 2022, the Diocese and related parties had been named in more than 450 such lawsuits.

These lawsuits led the Diocese to file for bankruptcy on June 17, 2024, in order to equitably compensate claimants with valid claims while continuing its important charitable mission. By the bar date set by the bankruptcy court, 489 claimants had filed proofs of claim in the bankruptcy. The Diocese and party-in-interest Catholic Mutual (which provides liability coverage to the Diocese and related parties) have objected to many of these claims as legally invalid, for reasons the bankruptcy judge

[1] The Diocese's formal name is the "Roman Catholic Bishop of San Diego" because under California law a religious body is incorporated by its bishop or other presiding officer as a "corporation sole." *See* Cal. Corp. Code § 10002 ("A corporation sole may be formed under this part by the bishop, chief priest, presiding elder, or other presiding officer of any religious denomination, society, or church, for the purpose of administering and managing the affairs, property, and temporalities thereof.").

divided into eleven categories. The bankruptcy judge agreed to consider and rule on many of these categories of objections, but held claims in two of the categories in abeyance, on the basis that he lacked jurisdiction as a bankruptcy judge.

Catholic Mutual now seeks to consolidate these objected-to claims before this District Court, as provided for by 28 U.S.C. § 157(b)(5), which states that "[t]he district court shall order that personal injury tort . . . claims shall be tried in the district court in which the bankruptcy case is pending." Section 157(b)(5) was enacted "to expand the district court's venue-fixing powers with an eye to centralizing the adjudication of a bankruptcy case." *In re Pan Am Corp.*, 16 F.3d 513, 516 (2d Cir. 1994) ("*Pan Am II*"). Its purpose is "to centralize the administration of the [bankruptcy] estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) (quoting 130 Cong. Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S.C.C.A.N. at 579)). Section 157(b)(5) reflects Congress's strong policy in favor of adjudicating personal injury cases related to a bankruptcy in the District where the bankruptcy is pending. *See In re Pan Am Corp.*, 950 F.2d 839, 845 (2d Cir. 1991) ("*Pan Am I*").

This Motion therefore seeks the transfer of 101 claims asserted in the Diocese's bankruptcy proceeding, together with the underlying actions asserted by the claimants in California state court (listed in Exhibit 1 hereto).[2] The bankruptcy judge viewed the objections to these claims as outside his jurisdiction to decide, but they are subject to this Court's jurisdiction under 28 U.S.C. § 157(b)(5), and may be

---

[2] These cases have been consolidated in JCCP 5105. Catholic Mutual asks this Court to take jurisdiction of the 101 state court actions (per §§157(b)(2)(B) and 1334(b)), as well as of the claims asserted by the same claimants in the bankruptcy proceeding, and to have this Court direct the bankruptcy court to make proposed findings and conclusions on the objections to those claims. It will serve judicial efficiency to take jurisdiction of the state court actions as well as of the objected-to bankruptcy claims, because if the bankruptcy court's report and recommendation is to disallow these claims, and this Court agrees, that result will be dispositive of the state court actions as well as the bankruptcy claims.

referred by this Court to the bankruptcy court for proposed findings and conclusions, under 28 U.S.C. § 157(c)(1) and S.D. Cal. General Order 312-E.

**Background**

Effective January 1, 2020, California revised its limitation statute for claims of childhood sexual abuse, reviving for three years (until December 31, 2022) the right to assert claims that were previously time-barred. Cal. C.C.P. § 340.1. During that window, over 450 claimants filed such lawsuits in California state court against the Diocese, and often also against related entities (the “state court actions”). On June 17, 2024, the Diocese (or “Debtor”) filed for bankruptcy in the Southern District of California under Chapter 11 of the Bankruptcy Code. *See* Bankr. S.D. Cal. No. 24-02202-CL11, Dkt. 1. Under S.D. Cal. General Order 312-E, the case was automatically referred to the bankruptcy court, which set February 3, 2025 as the deadline to file proofs of claim. *Id.*, Dkt. 292. By that bar date, 486 unique claimants filed proofs of claim.

Catholic Mutual is a party in interest in the bankruptcy proceedings (11 U.S.C. § 1109(b)) because it provides certain liability coverage to the Diocese and related parties such as parishes.[3] On November 17, 2025, Catholic Mutual and/or the Debtor objected to 169 of the proofs of claim, asking that they be disallowed as legally invalid on various bases.

Bankruptcy judges “may enter appropriate orders and judgments” in “all core proceedings” (28 U.S.C. § 157(b)(1)), including “disallowance of claims against the estate” (*id.* § 157(b)(2)(B)), “but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate” (*id.*).

---

[3] *See Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 285 (2024) (“An insurer with financial responsibility for bankruptcy claims is a ‘party in interest.’”); *In re: The Roman Catholic Diocese of Albany, New York*, No. 1:25-CV-01570 (BKS), 2026 WL 2923067, at *8-9 (N.D.N.Y. Sept. 29, 2026) (insurer of diocese in bankruptcy, asserting objections to claims, is a party in interest under 11 U.S.C. § 1109(b)) because it “is a party ‘potentially concerned with or affected by’ the question of whether the claims will be allowed”).

Determining that a personal injury tort claim is legally invalid, however, remains within the district court's power.[4]

The bankruptcy court (Judge Latham) grouped the 169 claim objections into eleven categories (with some claims subject to multiple categories). Judge Latham has been considering nine of the eleven categories of objections (by setting briefing schedules and issuing rulings),[5] but he ruled that as a bankruptcy judge he lacks jurisdiction to consider two categories of objections that "would brush up against § 157(b)(2)(B)'s limitations" because they "require factual determinations." Bankr. Dkt. 1565 at 3 & n.3. These two categories are Category 3 (whether the claim as originally asserted in state court satisfied the statute of limitation) and Category 10 (whether a claim can validly assert that the Diocese was negligent regarding "foreseeable" sexual misconduct, when the perpetrator was accused of such misconduct for the first time in the subject claim). In these two categories, 101 claim objections which may fall within Catholic Mutual's coverage remain unresolved.[6]

---

[4] *See In re Pac. Gas & Elec. Co.,* 279 B.R. 561, 565 n.4 (Bankr. N.D. Cal. 2002) ("the bankruptcy judge has authority to make threshold legal determinations affecting the validity of [personal injury] claims, such as whether the claims are barred by a claims deadline or statute of limitations"), *citing and following In re Chateaugay Corp.*, 111 B.R. 67, 73-74 (Bankr. S.D.N.Y. 1990) ("Although § 157(b)(2)(B) restricts a bankruptcy court's power to liquidate or estimate personal injury tort or wrongful death claims for purposes of distribution, it imposes no corollary restriction upon a bankruptcy court's ability to disallow such claims in the first instance if they are not sustainable at law. Allowing or disallowing claims is clearly a separate and distinct function from liquidating or estimating that claim."), *aff'd in relevant part and rev'd on other grounds*, 130 B.R. 403 (S.D.N.Y. 1991).

[5] Judge Latham's briefing schedules for groups of the objected-to claims have instructed the parties to brief specific categories of objections (*see* Bankr. Dkt. 1566, 1744, 1874, 1875, 2001), and he has disallowed 12 of these claims so far. *See id.*, Dkt. 1793, 1796, 1729, 1991, 1992, 1994, 1995, 2065. Catholic Mutual also made offers to settle all of the 169 objected-to claims; 35 of those offers were accepted and approved under Fed. R. Bankr. P. 9019(a), and were therefore disallowed as claims against the estate. *See* Bankr. Dkt. 1762, 1888.

[6] Some of the claims in these two categories have been resolved by the bankruptcy court's approval of settlements under Fed. R. Bankr. P. 9019(a). *See* Dkt. 1762, 1888. Some of the claims in these two categories have been disallowed on the basis of a different category of objection. *See* Dkt. 1566, 1744, 1874, 1875.

*See* Exhibit 1 hereto (listing the remaining unresolved claim objections and related State court actions).

Catholic Mutual now moves under 28 U.S.C. § 157(b)(5) to fix venue in this Court over those 101 claims and the underlying state court actions (consolidated in JCCP 5105). Such transfer is mandatory under the terms of § 157(b)(5). The centralization of these claims will foster the resolution of a significant number of claims based on commonly shared objections and the efficient administration of the bankruptcy estate. Upon transfer, this Court should refer these claim objections back to the bankruptcy court, to prepare proposed findings and conclusions for this Court's review, under 28 U.S.C. § 157(c)(1) and S.D. Cal. General Order 312-E. This will cure the bankruptcy court's concerns over its Article III jurisdiction to hear these claim objections.

## Argument

### I. This Court Has Jurisdiction Over Bankruptcy Personal Injury Claims.

The Diocese's bankruptcy case was referred from this Court to the bankruptcy court. Under 28 U.S.C. § 157(a), the "district court may provide that any or all cases under title 11 . . . shall be referred to the bankruptcy judges for the district." This District has provided for such automatic referral in its General Order 312-E.[7]

Under § 157(b)(1), the bankruptcy court has the power, upon referral, to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" and to "enter appropriate orders and judgments." Section 157(b)(2)(B) defines "core proceedings" as including:

> allowance or disallowance of claims against the estate . . . but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.

Bankruptcy courts have the power to determine that a claim (even a personal injury

[7] *See* https://www.casd.uscourts.gov/_assets/pdf/rules/GO_312E.pdf ("This court hereby refers to the bankruptcy judges of this district all cases under title 11, and all proceedings arising under title 11 or arising in or related to cases under title 11.").

claim) asserted in the bankruptcy has no legal validity at all, because this is not "liquidation or estimation" of the value of the claim. As a sister California district has explained:

> [T]he bankruptcy judge has authority to make threshold legal determinations affecting the validity of [personal injury] claims, such as whether the claims are barred by a claims deadline or statute of limitations.

*In re Pac. Gas & Elec. Co.,* 279 B.R. 561, 565 n.4 (Bankr. N.D. Cal. 2002), *citing and following In re Chateaugay Corp.,* 111 B.R. 67, 73-74 (Bankr. S.D.N.Y. 1990) ("Although § 157(b)(2)(B) restricts a bankruptcy court's power to liquidate or estimate personal injury tort or wrongful death claims for purposes of distribution, it imposes no corollary restriction upon a bankruptcy court's ability to disallow such claims in the first instance if they are not sustainable at law. Allowing or disallowing claims is clearly a separate and distinct function from liquidating or estimating that claim."), *aff'd in relevant part and rev'd on other grounds*, 130 B.R. 403 (S.D.N.Y. 1991).[8]

Catholic Mutual's and the Debtor's claim objections focused on claims they viewed as having facial legal defects, rather than on challenges requiring estimation of the claims' value. Judge Latham placed the claim objections into eleven categories, and agreed to hear and determine the objections in nine of the categories. *See* Bankr. Dkt. 1565 at 2-3 (noting that cases "recognize bankruptcy courts' authority to rule on threshold matters of personal injury claims," citing *In re Chateaugay Corp.* and

---

[8] *See also, e.g., In re Roman Cath. Diocese of Rockville Ctr.*, 650 B.R. 765, 776 (Bankr. S.D.N.Y. 2023) ("While a Bankruptcy Court cannot assess the substantive merits of a personal injury tort claim, . . . there is no such proscription for summarily disposing of claims which have no basis in law"); *In re G-I Holdings, Inc.*, 323 B.R. 583, 613 (Bankr. D.N.J. 2005) (long discussion of same, including split in courts' views on this issue); *In re UAL Corp.,* 310 B.R. 373, 380 (Bankr. N.D. Ill. 2004) (same; "The ordinary meanings of 'liquidate' and 'estimate,' as applied to a disputed claim, involve determining the amount of the claim rather than its validity."); *In re Dow Corning Corp.,* 215 B.R. 346, 349-51 (Bankr. E.D. Mich.), *supplemented*, 215 B.R. 526 (Bankr. E.D. Mich. 1997) (same).

others).

But Judge Latham "held in abeyance" the claim objections in the other two categories—Category 3 (whether the claim as originally asserted in state court satisfied the statute of limitation) and Category 10 (whether the claim could validly assert that the Diocese was negligent regarding "foreseeable" sexual misconduct, when the perpetrator was accused of such misconduct for the first time in the subject claim)—because he viewed them as requiring factual determinations that "would brush up against § 157(b)(2)(B)'s limitations" (and therefore as beyond the bankruptcy court's Article III jurisdiction as clarified in the wake of *Stern v. Marshall*, 564 U.S. 462 (2011)).

. Section 157 specifically provides that this Court has jurisdiction to hear and resolve any dispute concerning objections to personal injury claims asserted in bankruptcy:

> The district court *shall* order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case arose.

28 U.S.C. § 157(b)(5) (emphasis added). This provision applies both because this Court is the district court in which the bankruptcy case is pending and because the claims asserted in the proofs of claim arose in this district. Further, 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

Indeed, the terms used in § 157(b)(5) are mandatory: "The district court *shall* order that personal injury tort . . . claims *shall* be tried in the district court." (Emphasis added.) *See, e.g., In re Sansom,* No. 24-61446, 2025 WL 2382258, at *4 (Bankr. N.D. Ohio Aug. 15, 2025) ("Section 157(b)(5) does use the word 'shall'—which generally indicates that the provision is mandatory."), *report and recommendation adopted sub nom. Sansom v. Tucker*, No. 5:25MC36, 2025 WL 3023531 (N.D. Ohio Oct. 29,

2025) (transferring bankruptcy personal injury claims to district court).

This Court therefore should order transfer of jurisdiction over the objected-to personal injury tort claims asserted in this bankruptcy and the underlying state court actions,[9] fixing venue in this district court, under 28 U.S.C. §§ 157(b)(5) and 1334(b). *See Pan Am II*, 16 F.3d at 516 ("The transfer motion should be made to the district court in the district where the bankruptcy is proceeding."); *A.H. Robins Co. v. Piccinin*, 788 F.2d at 1011 ("Section 157(b)(5) . . . expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor"). This Court, not the bankruptcy court, is the proper court to order such transfer. *See In re U.S. Lines, Inc.*, 216 F.3d 228, 234 (2d Cir. 2000) ("We agree with the district court insofar as it determined that the bankruptcy court lacked the power to set venue under Section 157(b)(5).").

## II. This Court Should Transfer to Itself the Category 3 and Category 10 Objected-to Claims and Underlying State Court Actions, and Refer Them to the Bankruptcy Court for Proposed Findings and Conclusions.

Section 157(b)(5) permits transfer of claims to the district court (1) in which the bankruptcy case is pending or (2) in which the claims arose. Here, this District is both where the bankruptcy case is pending and where the claims arose. A "transfer motion should be made to the district court in the district where the bankruptcy is proceeding." *Pan Am II,* 16 F.3d at 516. When a court considers such a motion, "the presumption is that '[t]ransfer should be the rule, abstention the exception.'" *Id.* (quoting *Pan Am I*, 950 F.2d at 845).

Section 157(b)(5) reflects Congress's determination that personal injury claims related to a bankruptcy case are best resolved in a coordinated fashion in the district where the bankruptcy case is pending. *See Pan Am I*, 950 F.2d at 845. That is,

[9] As discussed in Section III below, the underlying tate court actions are "related to" the bankruptcy claims, and therefore within this Court's jurisdiction under § 1334(b).

"Congress enacted section 157(b)(5) to expand the district court's venue-fixing powers with an eye to centralizing the adjudication of a bankruptcy case." *Id*. Thus, the purpose of § 157(b)(5) is "to centralize the administration of the [bankruptcy] estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *A.H. Robins*, 788 F.2d at 1011 (quoting 130 Cong. Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S.C.C.A.N. at 579). Such an approach "increases the debtor's odds of developing a reasonable plan of reorganization which will 'work a rehabilitation of the debtor and at the same time assure fair and non-preferential resolution of the . . . claims.'" *In re Dow Corning Corp.*, 86 F.3d 482, 496 (6th Cir. 1996) (quoting *A.H. Robins*, 788 F.2d at 1011).

This District has recognized that "[t]he purpose of § 157(b)(5) is 'to centralize the administration of the bankruptcy estate and to eliminate the multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *In re Metabolife Int'l, Inc.*, No. 05CV1802-IEG(RBB), 2005 WL 8173410, at *3 (S.D. Cal. Nov. 3, 2005) (cleaned up and quoting *A.H. Robins*, 788 F.2d at 1011) (ordering transfer).

This Court therefore may, and should, transfer to itself the objected-to bankruptcy claims in Categories 3 and 10, together with the related underlying state court actions. Consolidation of these claims and cases through transfer will promote the effective administration of the estate. Determination of whether the Category 3 and 10 claims should be disallowed will help in assessing the estate's liabilities and in formulating a plan of reorganization.

Upon transfer, this Court may and should refer the claim objections back to the bankruptcy court for proposed findings and conclusions for this Court's review, under 28 U.S.C. § 157(c)(1) and S.D. Cal. General Order 312-E. This will cure the bankruptcy court's concerns over its jurisdiction to hear and rule on the claim objections, because the ultimate decisions will remain with this Court. Section 157(c)(1) specifically allows such referral:

A bankruptcy judge may hear a proceeding that is not a core proceeding

> but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1). Moreover, this District's General Order 312-E not only automatically refers bankruptcy cases to the bankruptcy court, but requires the bankruptcy judge to make proposed findings and conclusions for the district court's review, if an issue is outside the bankruptcy court's jurisdiction to decide:

> If a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding referred under this order and defined as core under 28 U.S.C. § 157(b)(2), the bankruptcy judge must, unless otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law to the district court in accordance with the provisions of Federal Rules of Bankruptcy Procedure, Rule 9033.[10]

S.D. Cal. General Order 312-E.

Sending these claims to state court for one-by-one litigation of the individual lawsuits that underlie virtually all of the bankruptcy proofs of claim would be an inefficient alternative. The purposes of bankruptcy and judicial efficiency are far better served by proceedings under this Court's stewardship.

## III. This Court Has Jurisdiction Over the State Court Actions, Including Claims Against the Debtor and its Nondebtor Co-defendants.

This Court has broad jurisdiction over any and all cases "arising in or related to cases under title 11." 28 U.S.C. § 1334(b). This means that the "district court's power to fix venue under § 157(b)(5) also extends to cases pending against nondebtor

---

[10] Fed. R. Bankr. P. 9033 ("Proposed Findings of Fact and Conclusions of Law") spells out the procedure for such proposed findings and conclusions by a bankruptcy court, including "Review by the District Judge" (providing for *de novo* review upon written objections, and the district judge's ability to "accept, reject, or modify the proposed findings of fact or conclusions of law, take additional evidence, or remand the matter to the bankruptcy judge with instructions").

defendants which are 'related to' a debtor's bankruptcy proceedings pursuant to 28 U.S.C. § 1334(b)." *Metabolife*, 2005 WL 8173410, at *3.

The State court actions against the Diocese and co-defendants, such as parishes, should be transferred to this Court as cases related to the bankruptcy. A civil proceeding is related to bankruptcy whenever "*the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (emphasis in original) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Examples of such an effect are "altering debtor's rights, liabilities, options, or freedom of action, or otherwise hav[ing] an impact upon the handling and administration of the bankrupt estate." *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 496 B.R. 256, 267 (D. Mass. 2013) (internal quotation omitted). "When a plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334." *In re Dow Corning Corp.,* 86 F.3d at 492. *See also In re Wood*, 825 F.2d 90, 94 (5th Cir. 1987) (same); *In re Triad Grp., Inc.*, No. 13-C-1307, 2014 WL 580778, at *2 (E.D. Wis. Feb. 14, 2014) (holding that direct actions against the debtors and their affiliates are "clearly within the scope of the Court's 'related to' jurisdiction").

This jurisdiction is interpreted broadly. "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quotation omitted). This jurisdiction encompasses all litigation that "'could conceivably have any effect upon the [debtors'] estate being administered." *In re Robert Plan Corp*., 777 F.3d 594, 597 (2d Cir. 2015) (quoting *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983)). In determining whether a case "relates to" a bankruptcy, "[c]ertainty, or even likelihood, is not a requirement." *In re Marcus Hook Dev. Park, Inc*., 943 F.2d 261, 264 (3d Cir. 1991). Instead, jurisdiction exists "so long as it is possible that a proceeding may

[have an] impact on the debtor's rights, liabilities, options, or freedom of action" or the "handling and administration of the bankruptcy estate." *Id*. (quotation omitted).

Here, the bankruptcy claimants assert the same claims against the Diocese that they previously asserted in state court after the revival window was opened. The claims asserted in the state court actions against the Diocese's co-defendants, such as parishes, are "related to" the claims asserted against the Diocese in the state court and bankruptcy proceedings. The state court actions were consolidated in JCCP 5105 (*Diocese of San Diego Cases*), and the Model Complaint used by all the JCCP plaintiffs describes the parishes and other co-defendants as affiliates of the Debtor Diocese:

> 2.1. [Additional language if suing parish or school:] Defendant Doe 2 ("Defendant School / Parish") is a Roman Catholic church, parish or school located in [Name of City], [Name of County], California. Defendant School / Parish is the school or other organization where Plaintiff was a student or member at the time of the wrongful conduct. Defendant Doe 2 was either independently liable for its own conduct as alleged herein, and/or is liable as a successor in interest to another entity, and/or is an alter ego of Defendant Diocese.

Model Complaint, Bankr. Dkt. 1479-1, Ex. A. Plaintiffs allege liability resulting from the joint conduct of the Diocese and the co-defendants:

> 4. Each Defendant is the agent, servant and/or employee of other Defendants, and each Defendant was acting within the course and scope of his, her or its authority as an agent servant and/or employee of the other Defendant. Defendants, and each of them, are individuals, corporations, partnerships, and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint.

*Id*.

Indeed, there can be no doubt that claims against the parishes, asserted in the State court actions, are related to the Diocese's bankruptcy. In JCCP 5105, the presiding judge held that claims against the parishes (which at the time of the events at issue had no corporate existence apart from the Diocese) survived demurrer only

because of a possible successor liability theory. *See* JCCP 5105 Minute Order entered 12/02/2021 (Ex. 2 hereto). That means the parishes' liability, if any, is derivative. *See, e.g., T.H. v. Novartis Pharms. Corp.,* 4 Cal. 5th 145, 183 (2017) (successor liability is derivative). The JCCP order shows that claims against the parishes are not only related to claims against the Diocese, but exist only derivatively of the Diocese's asserted liability.

The threshold inquiry for "related to" jurisdiction is met. The outcome of the State court actions against the parishes (and any other co-defendants of the Diocese in claims arising out of the same set of operative facts) could conceivably have an effect on the Debtor Diocese's estate, both because the alter-ego claims asserted by the plaintiffs as set forth in the Model Complaint implicate the Diocese's liability, and because the JCCP 5105 ruling establishes that parish liability is derivative of Diocese liability.

**Conclusion**

For the reasons stated above, Catholic Mutual respectfully requests that the Court grant its motion to fix venue in this Court (taking jurisdiction of the objected-to bankruptcy claims at issue and the underlying state court actions by these claimants), and refer the claim objections to the bankruptcy court for proposed findings and conclusions.

Dated: October 20, 2026

Respectfully submitted,

**ARENTFOX SCHIFF LLP**

By: */s/ Aram Ordubegian*
Aram Ordubegian
Christopher K.S. Wong
Everett J. Cygal (PHV forthcoming)
Daniel J. Schufreider (PHV forthcoming)

Counsel for The Catholic Mutual Relief Society of America and Catholic Relief Insurance Company