Thomas E. Patterson (State Bar No. 130723)
Daniel J. Bussel (State Bar No. 121939)
Samuel M. Kidder (State Bar No. 284015)
Sasha M. Gurvitz (State Bar No. 301650)
KTBS LAW LLP
1801 Century Park East, 26th Floor
Los Angeles, CA 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: tpatterson@ktbslaw.com
dbussel@ktbslaw.com
skidder@ktbslaw.com
sgurvitz@ktbslaw.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SAN DIEGO, a California Corporation Sole,<br><br>Debtor. | Case No. 3:26-cv-05985-CAB-JLB<br><br>**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OPPOSITION TO CATHOLIC MUTUAL'S MOTION TO FIX VENUE UNDER 28 U.S.C. §§ 157(b)(5) AND 1334(b) AND TO REFER CLAIM OBJECTIONS TO BANKRUPTCY COURT FOR PROPOSED FINDINGS AND CONCLUSIONS**<br><br>(Related Bankruptcy Case No. 24-02202-CL11, Hon. Christopher B. Latham)<br><br>Judge: Hon. Cathy Ann Bencivengo<br>Magistrate Judge: Hon. Jill L. Burkhardt<br>Motion Date: November 24, 2026 |

# Table of Contents

Table of Authorities .......... 3

Introduction .......... 7

Factual Background .......... 10

Procedural Background .......... 12

Argument .......... 16

A. CMG seeks to refer jury issues to the Bankruptcy Court for factfinding .......... 17

B. CMG, a nondebtor nonparty, cannot direct where survivor lawsuits are tried .......... 21

C. The Court should abstain from CMG's attempt to fracture estate litigation .......... 25

D. CMG has not justified subject-matter jurisdiction over the nondebtor claims .......... 30

Conclusion .......... 31

# Table of Authorities

**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) .......... 29

*In re Anderson*,
670 B.R. 528 (Bankr. S.D. Ohio 2025) .......... 25

*Arnold v. Garlock, Inc.*,
278 F.3d 426 (5th Cir. 2001) .......... 25

*In re Chateaugay Corp.*,
111 B.R. 67 (Bankr. S.D.N.Y. 1990) .......... 14, 17, 18, 19

*Cortina v. North American Title Co.*,
120 Cal. App. 5th 1030 (2026) .......... 19

*Cowlin v. Pringle*,
46 Cal. App. 2d 472 (1941) .......... 18

*Doe v. Roman Catholic Archbishop of Los Angeles*,
70 Cal. App. 5th 657 (2021) .......... 18

*In re Dow Corning Corp.*,
215 B.R. 346 (Bankr. E.D. Mich. 1997) .......... 18

*In re Dow Corning Corp.*,
86 F.3d 482 (6th Cir. 1996) .......... 29

*Drew v. ALG Senior, LLC*,
2022 WL 3755852 (Bankr. M.D. Ala. Aug. 29, 2022) .......... 23

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
546 F.3d 981 (9th Cir. 2008) .......... 30

*In re Eight Adversary Proceedings Removed from State Court*,
603 B.R. 849 (Bankr. S.D. Fla. 2019) .......... 23

*In re G-I Holdings*,
323 B.R. 583 (Bankr. D.N.J. 2005) .......... 17, 19, 20

*In re Gawker Media LLC*,
571 B.R. 612 (Bankr. S.D.N.Y. 2017) .......... 13

*HCSC-Laundry v. United States*,
450 U.S. 1 (1981) .......... 19

*Hopkins v. Plant Insulation Co.*,
342 B.R. 703 (D. Del. 2006) .......... 23, 29

*In re Houghton*,
164 B.R. 146 (Bankr. W.D. Wash. 1994) .......... 30

*In re Imerys Talc America, Inc.*,
2019 WL 3253366 (D. Del. July 19, 2019) .......... 30

*Kadel v. Thompson*,
84 B.R. 878 (N.D. Ga. 1988) .......... 22, 23

*Kerkhof v. Johnson & Johnson*,
602 B.R. 928 (D. Md. 2019) .......... 22

*Kilburn v. Patterson*,
2024 WL 3833664 (C.D. Cal. Aug. 15, 2024) .......... 22

*Laine v. Gross*,
128 B.R. 588 (D. Me. 1991) .......... 21

*Langenkamp v. Culp*,
498 U.S. 42 (1990) .......... 20

*Lent v. Doe*,
40 Cal. App. 4th 1177 (1995) .......... 18

*In re Marshall*,
600 F.3d 1037 (9th Cir. 2010) .......... 22

*In re Metabolife International*,
2005 WL 8173410 (S.D. Cal. Nov. 3, 2005) .......... 23, 24

*In re North American Health Care, Inc.*,
544 B.R. 684 (Bankr. C.D. Cal. 2016) .......... 20

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982) .......... 22

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984) .......... 30

*In re Pan Am Corp.*,
950 F.2d 839 (2d Cir. 1991) .......... 9, 24, 25, 29

*In re Pegasus Gold Corp.*,
394 F.3d 1189 (9th Cir. 2005) .......... 30

*In re Roman Catholic Bishop of San Diego*,
374 B.R. 756 (Bankr. S.D. Cal. 2007) .......... 25, 26, 28

*In re Schepps Food Stores, Inc.*,
169 B.R. 374 (Bankr. S.D. Tex. 1994) .......... 17

*Security Farms v. International Brotherhood of Teamsters*,
124 F.3d 999 (9th Cir. 1997) .......... 21

*Sharma v. HSI Asset Loan Obligation Trust 2007-1*,
23 F.4th 1167 (9th Cir. 2022) .......... 22

*Shaw v. Superior Court*,
2 Cal. 5th 983 (2017) .......... 7, 8, 18

*Stern v. Marshall*,
564 U.S. 462 (2011) .......... 21, 22

*Sylve v. Riley*,
15 Cal. App. 4th 23 (1993) .......... 18

*Tanha v. Macy's Inc.*,
2013 WL 1365953 (N.D. Cal. Apr. 3, 2013) .......... 22

*In re Tucson Estates*,
912 F.2d 1162 (9th Cir. 1990) .......... 26

*In re UNR Industries*,
45 B.R. 322 (N.D. Ill. 1984) .......... 19

*Weirick v. Brenntag North America, Inc.*,
2019 WL 1976436 (C.D. Cal. May 3, 2019) .......... 22

*Wooddell v. International Brotherhood of Electrical Workers*,
502 U.S. 93 (1991) .......... 7

*In re Woodside Group, LLC*,
2010 WL 11596179 (C.D. Cal. May 21, 2010) .......... 21

*In re W.R. Grace & Co.*,
591 F.3d 164 (3d Cir. 2009) .......... 30

**Statutes and Rules**


11 U.S.C. § 101 .......... 31

11 U.S.C. § 501 .......... 12

11 U.S.C. § 502 .......... 12

11 U.S.C. § 1103 .......... 13

11 U.S.C. § 1109 .......... 13

11 U.S.C. § 1129 .......... 25

28 U.S.C. § 157 .......... *passim*

28 U.S.C. § 1334 .......... 7, 13, 26, 27, 30

28 U.S.C. § 1367 .......... 30

28 U.S.C. § 1411 .......... 8, 13, 19, 20

28 U.S.C. § 1441 .......... 22

28 U.S.C. § 1452 .......... 22, 23, 25

A.B. 218, ch. 861, 2019–2020 Cal. Reg. Sess. (2019) .......... 10, 12, 13, 17

Cal. Code Civ. Proc. § 592 .......... 18

Cal. Code Civ. Proc. § 638 .......... 19

Cal. Code Civ. Proc. § 639 .......... 19

Cal. Evid. Code § 312 .......... 18, 19

Fed. R. Bankr. P. 3002 .......... 12


**Other Authorities**


7 Collier on Bankruptcy (16th ed. 2026) .......... 25

Report of the California Assembly Committee on the Judiciary, 2019–2020 Regular Session (Mar. 12, 2019) .......... 10

S. Elizabeth Gibson, FEDERAL JUDICIAL CENTER, *Judicial Management of Mass Tort Bankruptcy Cases* (2005) .......... 24

The Official Committee of Unsecured Creditors (the "**Committee**") in the bankruptcy case (the "**Bankruptcy Case**") of the Roman Catholic Bishop of San Diego (the "**Debtor**" or "**Diocese**"), currently pending in the United States Bankruptcy Court for the Southern District of California (the "**Bankruptcy Court**"), submits this opposition to the *Motion to Fix Venue Under 28 U.S.C. §§ 157(b)(5) and 1334(b) and to Refer Claim Objections to Bankruptcy Court for Proposed Findings and Conclusions* [Doc. No. 1] (the "**Motion**") filed by the Debtor's insurer, Catholic Mutual Relief Society of America and the Catholic Relief Insurance Company (together, "**CMG**").

## <u>Introduction</u>

1. The creditors in this bankruptcy are not commercial counterparties. They are survivors of child sex abuse at the hands of perpetrators acting under the authority of the Diocese. Many of these survivors lost their right to seek justice under previous California law requiring survivors of childhood sexual abuse to sue within one year of their 18th birthdays, long before most could understand the trauma they experienced. But in 2020, the California Legislature revived the causes of action for child sexual assault, and 457 of these survivors sued the Diocese and its affiliates in California Superior Court. The cases were coordinated before a state-court judge empowered to steer them toward a resolution.

2. The Diocese filed its bankruptcy petition on June 17, 2024. The United States Trustee promptly appointed nine representative survivors to serve as the official creditors' committee. The Bankruptcy Case automatically stayed the state-court litigation against the Diocese, but it did not change the nature of the claims. Each survivor alleges that the Diocese committed negligence-based and other torts, resulting in personal injuries.

3. These claimants are indisputably entitled to jury trials on their claims and all factual issues subsumed within them. Personal-injury actions are the "prototypical example of an action at law, to which the Seventh Amendment applies." *Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 98 (1991). California law not only recognizes a jury right for these claims, but also makes clear that "[w]hen the right to jury trial exists, it provides the right to have a jury try and determine issues of fact." *Shaw v. Superior Ct.*,

2 Cal. 5th 983, 993 (2017) (emphasis omitted). Congress has expressly preserved these rights in bankruptcy. 28 U.S.C. § 1411(a) (Bankruptcy Code "do[es] not affect" jury rights of personal-injury claimants "under applicable nonbankruptcy law"). Although bankruptcy courts can dispose of commercial and other claims through a summary claim-objection process, they may not "liquidat[e] . . . personal injury tort or wrongful death claims against the estate," 28 U.S.C. § 157(b)(2)(B), a prohibition that includes any disposition requiring factual findings about the claims. Where factual disputes exist, they must be tried to a jury, and only a state court or district court may try them. *Id.* § 157(b)(5).

4. The Bankruptcy Court recognized and respected these limits here. One year ago, CMG and the Debtor filed 226 claim objections seeking to disallow 169 survivor claims. But, in March 2026, the Bankruptcy Court held that most of the objections—including all those that are the subject of the Motion—trigger factual disputes that the Bankruptcy Court cannot decide. CMG could have appealed or sought to withdraw the bankruptcy reference. The Debtor might have removed the impacted state-court cases to this Court (since CMG, a nonparty, cannot). None of this happened. An appeal or a motion to withdraw the reference would now be grossly untimely, and the Debtor has not removed the cases. Yet CMG presents the Court with a jurisdictional Frankenstein's monster, pieced together from various forms of relief that are otherwise procedurally barred here.

5. The crux of the Motion is that the insurer wants the Bankruptcy Court to issue proposed fact findings, with *de novo* review by this Court, *on disputed factual issues that are subject to jury trials.* This Court, however, could not adopt the Bankruptcy Court's proposed findings without displacing the jury, and juries do not take reports and recommendations on disputed facts from bankruptcy judges. CMG has not presented the Court with a single example of this procedure. Even the statute CMG relies on, 28 U.S.C. § 157(b)(5), explicitly orders that these claims "shall be tried" in district court.

6. Equally unprecedented is the idea of a debtor's insurer dictating to the parties to litigation when and where that litigation should take place. The Debtor has neither removed any cases nor joined CMG's request to "transfer" cases from the state court; the

Debtor's "limited joinder" in the Motion, Doc. No. 7, conspicuously ***did not*** join the request to transfer the state-court cases to federal court. Thus, if successful, the Motion would apparently be the first time a nondebtor has ever been permitted to use section 157(b)(5)[1] to decide where litigation to which it is not a party would take place.

7. CMG's procedural experiment fails in four key respects. ***First***, CMG asks that 101 claims be referred to the Bankruptcy Court for findings of fact, but the facts at issue must be found by a jury under applicable law. Juries determine facts based on evidence presented to them at trial, not recommendations from judges.

8. ***Second***, the Motion is no substitute for removal, which the Debtor has not done. Section 157(b) does not create jurisdiction for this Court; it only provides for, and limits, a district court's delegation of jurisdiction *it already has* to the bankruptcy court. CMG, a nonparty to the state-court cases, cannot remove them to federal court, and its unauthorized attempt to do so has not vested this Court with jurisdiction.

9. ***Third***, even if the Motion could vest the Court with jurisdiction, the Court should abstain. CMG says that "the terms used in § 157(b)(5) are mandatory," Mot. at 18, but "section 157(b)(5) has consistently been construed to recognize discretion in district courts to leave personal injury cases where they are pending." *In re Pan Am Corp.*, 950 F.2d 839, 844 (2d Cir. 1991). Plucking 90 of 457 cases from a coordinated state-court proceeding where they have been pending for years to start anew in federal court, alongside another 11 bankruptcy claims not attached to any state-court suits, would not consolidate litigation. It would do the opposite. All the factors traditionally applied to abstention in the bankruptcy context suggest that this Court should exercise its discretion to leave the cases where they are. *See* Section C, *infra* (laying out Ninth Circuit factors).

10. ***Fourth***, CMG falls far short of the jurisdictional showing necessary to pull claims by nondebtors against nondebtors into this Court. The nondebtor defendants include

---

[1] Statutory references are to the Judicial Code unless otherwise noted.

not only parishes but also secular institutions, out-of-state entities, and other dioceses. Bankruptcy jurisdiction may be broad, but it requires something more than shared facts between debtor and nondebtor claims. CMG also provides no plan for liquidating nondebtor claims given that the claim objections only address *the Debtor's* liabilities.

11. CMG has already tried and failed to obtain the adjudication it wants on these 101 claims in the Bankruptcy Court. The Bankruptcy Court rejected CMG's attempt, and CMG never appealed. The Motion is a thinly disguised untimely appeal, a defective withdrawal of the reference, and a backdoor attempt at removal, all packaged together as a "transfer" unauthorized by the Judicial Code. The objective can only be to create delay and cost for claimants, fracture jurisdiction of the presently consolidated cases among three courts, and at all costs prevent the plaintiffs from obtaining the jury trials guaranteed to them by applicable law. There is no precedent for this result. The Motion should be denied.

**Factual Background**

12. The Debtor's bankruptcy case arises from decades of sexual abuse of children entrusted to its care. This is the Debtor's second such bankruptcy. In 2007, it filed its first case after legislation in California revived time-barred child sexual assault claims in 2003, resulting in a $198,125,000 settlement. *Declaration of Rodrigo Valdivia in Support of Debtor's First Day Motions* [Bankr. Case Doc. No. 14] (the "**Valdivia Declaration**") ¶ 52.

13. California passed another law reviving child sexual assault claims in 2019. A.B. 218, ch. 861, 2019–2020 Cal. Reg. Sess. (2019) ("**A.B. 218**"). A.B. 218 opened a three-year window for previously time-barred claims. *Id.* § 1. It also provided that, even after this window, these claims may be brought "within five years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness . . . was caused by the sexual assault." *Id.* This provision—the "delayed discovery" rule—recognizes that "it may be decades before a survivor connects the struggles they have with their assault." *See* Report of Cal. Assemb. Comm. on Jud. at 6, 2019–2020 Reg. Sess. (Mar. 12, 2019) (quoting testimony).

14. After the revival window opened on January 1, 2020, 457 survivors of child sex abuse filed lawsuits against the Debtor and numerous nondebtor defendants, including other Catholic entities, in state court. Bankr. Case Doc. No. 1892 at 4 n.1. In September 2020, the Judicial Council of California issued an order coordinating these actions and similar lawsuits against the Catholic diocese of San Bernardino into a Judicial Council Coordination Proceeding (the "**JCCP**") in the California Superior Court for San Diego County (the "**Coordination Court**"). *Request for Judicial Notice in Support of the Official Committee of Unsecured Creditors' Opposition to CMG's Venue Motion* ("**RJN**") Ex. 1.

15. The Coordination Court oversaw substantial pretrial practice. In January 2022, it issued a case management order that, among other things, ordered all plaintiffs to conform to a single Model Complaint. RJN Ex. 2 at 3. The defendants brought multiple demurrers to the Model Complaint, including a demurrer by the Debtor and others arguing, among other things, that "the claims lack facts to show Defendants had prior notice or knowledge that the alleged abusers would commit acts of sexual abuse." RJN Ex. 3 at 9. The demurrers were overruled. Mot. Ex. 2. Plaintiffs were directed to fill out sworn case questionnaires, and defendants gained access to medical and employment records. RJN Ex. 2 at 8. Finally, in August 2022, the Coordination Court set trials for six bellwether cases, three each against the Diocese and the San Bernardino diocese. RJN Ex. 4.

16. The Bankruptcy Case paused the cases against the Debtor, but litigation has proceeded against the San Bernardino diocese. In September 2026, the Coordination Court remarked that "we have trial dates available here. Just so you know, we can get [a case] tried this year, if anybody were interested." RJN Ex. 5 at 9:4–7.

17. CMG has been the Debtor's sole liability insurer since 1958. This coverage is subject to per-occurrence limits of up to $10,500,000, but, until 1986, this coverage had no aggregate limits applicable to sexual assault claims. Bankr. Case Doc. No. 650 at 39–40 (CMG charts of liability limits). CMG thus faces billions of dollars in exposure. *See id.*

**Procedural Background**

18. The Debtor filed the Bankruptcy Case on June 17, 2024 (the "**Petition Date**"). The Bankruptcy Court set a deadline for survivor proofs of claim. Bankr. Case Doc. No. 292. According to the Debtor, 487 survivor claimants—including the JCCP plaintiffs—filed timely claims against the Debtor. Bankr. Case Doc. No. 1892 at 4.

19. In November 2025, the Debtor and CMG filed 226 individual claim objections targeting 169 survivors. Bankr. Case Doc. No. 1558-1 (summarizing objections). The Debtor and CMG objected to many of the same claims, and on multiple grounds, so the number of objections exceeds the number of claims subject to objection. CMG described the claims it objected to as the lowest-value ones, stating that its objections targeted "facially invalid" claims and "dead wood." Bankr. Case Doc. No. 1439 at 7–8.

20. Most of the claim objections were based on two grounds. First, both the Diocese and CMG argued that 45 claims were time-barred because the claimants did not sue during the A.B. 218 window. *See* Bankr. Case Doc. No. 1558-1; Bankr. Case Doc. No. 981 (CMG memo re statute-of-limitations objections). The Bankruptcy Court dubbed these the "Category 3" objections. Bankr. Case Doc. No. 1565 at 3. Second, CMG argued that 108 claims "allege abuse by a perpetrator accused for the first time (as to whom no prior notice of abusive conduct existed), and thus fail to state a claim for negligence." Bankr. Case Doc. No. 991 at 2 (CMG memo re notice objections). These were dubbed "Category 10." Bankr. Case Doc. No. 1565. The Debtor did not join these objections.

21. The objections touched off a specialized bankruptcy procedure for treating claims in bankruptcy. Under the Bankruptcy Code, any person with a claim against a debtor must file a proof of claim. 11 U.S.C. § 501; Fed. R. Bankr. P. 3002(a). Parties in interest to the bankruptcy case may then object to the claims. 11 U.S.C. § 502(a). If the objection is sustained, the claim is "disallowed" and will not be paid from the debtor's estate; otherwise, it remains as a *prima facie* valid liability of the debtor. *Id.*

22. However, the Judicial Code limits the disallowance of personal-injury claims. Bankruptcy courts can only enter final orders in "core" proceedings. 28 U.S.C.

§ 157(b)(1). Section 157(b)(2)(B) describes "allowance or disallowance of claims against the estate"—*i.e.*, claim objections—as core. But it carves out "the liquidation . . . [of] personal injury tort . . . claims against the estate for purposes of distribution." *Id.* Section 1411(a) expressly preserves these claimants' jury rights, providing that the Bankruptcy Code and the Judicial Code's venue provisions "do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury . . . claim." In turn, section 157(b)(5) provides that these claims "shall be tried" in district court. These provisions reflect Congress's intent that bankruptcy courts "should not be a repository for thousands and thousands of personal injury claims," given that these claimants "'do not voluntarily become involved' with the debtor." *In re Gawker Media LLC*, 571 B.R. 612, 621 (Bankr. S.D.N.Y. 2017) (quoting legislative history).

23. Accordingly, when the Debtor and CMG filed the claim objections, the Committee and certain claimants moved the Bankruptcy Court to abstain under 28 U.S.C. § 1334(c)(1), which allows a federal court to abstain from bankruptcy proceedings "in the interest of justice, or in the interest of comity with State courts or respect for State law." Bankr. Case Doc. No. 1355 (the "**Abstention Motion**").[2] As to the statute-of-limitations objections, the movants argued that claimants who filed suit after the A.B. 218 window (or who had not filed suit as of the Petition Date) may nevertheless have timely claims under the delayed-discovery rule. These objections, therefore, create questions of fact, closely tied to the underlying personal injuries, about when each claimant discovered or should

---

[2] CMG argued that the Abstention Motion consisted of improper advocacy by the Committee on behalf of individual claimants, as opposed to the creditor class. Bankr. Case Doc. No. 1314. However, the Bankruptcy Court ruled that the Abstention Motion was a "service[ ] performed 'in the interest of [the Committee's] broader constituency.'" Bankr. Case Doc. No. 1999 at 5 (citation omitted); *see also* 11 U.S.C. § 1103(c)(5) (creditors' committees may "perform such . . . services as are in the interest of those represented"). The Committee may appear and be heard on the Motion under Bankruptcy Code section 1109(b) ("A party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter.").

have discovered that their injuries were related to child sexual assault. Abstention Mot. at 18–19. The Category 10 objections raise the questions whether the Diocese had notice of the risk of abuse and whether such notice was even required under the circumstances, and thus likewise present triable issues of fact that are subject to jury rights. *Id.* at 17–18.

24. Hundreds of individual claimants also weighed in. Certain claimants represented by the Zalkin Law Firm, LLP (survivors' liaison counsel in the JCCP) filed a reply in support of the Abstention Motion explaining that the question of notice is factually intensive. Bankr. Case Doc. No. 1479. And another group of survivors added that the statute-of-limitations objections likewise raise fact issues about when claimants discovered the source of their injuries. Bankr. Case Doc. No. 1490. These pleadings are attached as Exhibits A and B hereto, and the arguments therein are incorporated by reference.

25. The Bankruptcy Court ruled that it could "make an initial determination on issues that are only tangentially related to the actual physical event causing the personal injury tort." Bankr. Case Doc. No. 1565 (the "**Abstention Order**") at 2 (quoting *In re Chateaugay Corp*., 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1990), *aff'd in part and rev'd in part on other grounds*, 130 B.R. 403 (S.D.N.Y. 1991)). But, importantly, the Bankruptcy Court recognized that it lacked jurisdiction to "reach factual disputes on the personal injury; only a state or district court may do that." *Id.* at 3. Adjudicating the Category 3 and 10 objections "would brush up against § 157(b)(2)(B)'s limitations." *Id.* The Bankruptcy Court also noted that "California's governing statute seems purposely to require factual determinations." *Id.* at 3 n.3. The Bankruptcy Court thus held the Category 3 and 10 claim objections in abeyance, but announced that it would schedule hearings to address the other claim objections. *Id.* at 3.

26. No party appealed the Abstention Order. In addition, none sought to withdraw the reference of the claim objections. Under the Judicial Code, a district court may refer proceedings that arise under the Bankruptcy Code, or arise in or relate to bankruptcy cases, to the district's bankruptcy court. 28 U.S.C. § 157(a). In this District, all claims that fall within the bankruptcy jurisdiction are automatically referred to the Bankruptcy Court.

Gen. Order 312-E (S.D. Cal. Nov. 27, 2013). However, a district court may withdraw any proceeding referred to the Bankruptcy Court "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). CMG did not seek this relief.

27. The Bankruptcy Court has since reaffirmed its ruling. At a hearing in May 2026, Debtor's counsel asked the court to reconsider the Abstention Order and "address the prohibition against hearing statute of limitations claims objections." 5/1/26 Hr'g Tr., Bankr. Case Doc. No. 1740 at 31:11–32:4. The Bankruptcy Court declined, remarking that the delayed-discovery rule is "not a garden variety statute of limitations" and requires "really evaluating the merits of the underlying personal injury claim." *Id.* at 32:6–15.

28. In the 12 months since the claim objections were filed, the Bankruptcy Court has disallowed the claims of six survivors by final order, most of whom were unrepresented and/or filed no opposition, Bankr. Case Doc. Nos. 1795, 1796, 1991, 1995, 2050, 2063, while three other rulings disallowing claims are subject to pending appeals or reconsideration, Bankr. Case Doc. Nos. 1813, 2037, 2095. The Bankruptcy Court also sustained two unopposed claim objections on November 6, 2026, but the 14-day appeal or reconsideration period has not run as of this filing. Bankr. Case Doc. Nos. 2167, 2168.

29. The Committee has consistently been opposed to litigating sexual-abuse claims in a federal forum. Early in the Bankruptcy Case, the Committee made clear that "removal [of sexual abuse claims to federal court] would amount to forum shopping in derogation of a demonstrated compelling state interest." Bankr. Case Doc. No. 179 at 6.

30. Consistent with this view, the Committee moved to lift the automatic stay in May 2025 to allow 16 bellwether cases to proceed in the JCCP to obtain claim values and incentivize the parties to reach a global bankruptcy settlement. Bankr. Case Doc. Nos. 568, 570. This motion was denied without prejudice as premature. Bankr. Case Doc. No. 851. As the case progressed, however, mediation yielded no tangible results and the Debtor showed no signs of restructuring. Meanwhile, in four of the other five pending diocese bankruptcies in California, bankruptcy courts have lifted the automatic stay for select bellwether cases as a way to catalyze settlement. *See* Bankr. Case Doc. No. 2053 at 11–14

(Committee memo collecting cases). Accordingly, in September 2026, the Committee renewed its request for stay relief and identified six bellwether plaintiffs. *Id.* at 16–17.

31. CMG filed the instant Motion while stay-relief briefing was still underway as part of its strategy to oppose stay relief. Two of the cases CMG seeks to transfer are among the six identified in the stay-relief motion. CMG misrepresented to the Bankruptcy Court that the mere filing of its Motion meant that "these two cases are no longer under the jurisdiction of the state court." Bankr. Case Doc. No. 2153 at 14. The stay-relief motion was heard on November 3, 2026 and remains under submission.

32. The Motion proposes a procedure that, to the Committee's knowledge, has never been ordered in any other bankruptcy involving personal-injury claims. It asks, first, for this Court to "take jurisdiction" over 101 survivor claims. Mot. at 5.[3] Next, the Motion asks the Court to refer the claim objections to the Bankruptcy Court for findings and conclusions, subject to *de novo* review in this Court. *Id.* The substantial majority of the objections that the Motion seeks to litigate (impacting 87 of the 101 claimants) were not joined by the Debtor but rather were filed by CMG alone. CMG does not say what would happen if the claim objections are overruled, nor address claimants' jury rights.

## **<u>Argument</u>**

33. The Motion has four fatal defects. ***First***, the claim objections undisputedly raise factual issues that must be tried to juries; referring these to the Bankruptcy Court would deny claimants their jury rights. ***Second***, section 157(b)(5) is a venue statute, not a jurisdictional grant. CMG cannot use it to accomplish a backdoor removal of litigation that the Debtor has not removed and which, as a nonparty, CMG cannot remove. ***Third***, CMG seeks to use section 157(b)(5) to fracture, rather than consolidate, litigation against the Debtor; if there were federal jurisdiction here, abstention would be appropriate.

---

[3] CMG has not filed a proof of service indicating how it provided notice of the Motion to the impacted creditors, let alone the dozens of nondebtors who would be transferred to this Court. The Motion should not be granted on inadequate notice.

***Fourth***, the nondebtor survivors' claims against nondebtor defendants fall outside the Court's jurisdiction altogether. Together, these defects show that the Motion is a half-baked scheme to multiply proceedings and abridge survivors' rights. It should be denied.

**A. CMG seeks to refer jury issues to the Bankruptcy Court for factfinding**

34. The Motion asks the Court to "take jurisdiction" over state-court cases and then "refer the claim objections back to the bankruptcy court for proposed findings and conclusions for this Court's review." Mot. at 20. But referring jury issues to a bankruptcy court is fundamentally illogical and a waste of judicial resources.

35. There is no dispute that the 101 claims CMG seeks to transfer raise fact issues. In the Abstention Order, the Bankruptcy Court held that it would only rule on "threshold matters of personal injury claims" and "not reach factual disputes on the personal injury; only a state or district court may do that." Abstention Order at 2–3. The Bankruptcy Court found that A.B. 218's statute of limitations "seems purposely to require factual determinations." *Id.* at 3 n.3; 5/1/26 Hr'g Tr., Bankr. Case Doc. No. 1740 at 32:6–15 (Bankruptcy Court remark that A.B. 218 is "not a garden variety statute of limitations").

36. The Bankruptcy Court's decision was well-founded. The cases are split on whether bankruptcy courts may hear *any* objections to personal-injury claims, even those that involve purely legal issues. *E.g.*, *In re Schepps Food Stores, Inc.*, 169 B.R. 374, 377 (Bankr. S.D. Tex. 1994) (bankruptcy court's disallowance of a personal-injury claim on any grounds would "effectively liquidate the claim for purposes of distribution" and is barred by "the plain language of section 157(b)(2)(B)"). But even courts that hold that personal-injury claims can be disallowed based on purely legal defenses—akin to those that can be raised in a motion to dismiss or summary judgment motion—stop short of authorizing bankruptcy courts to disallow claims based on disputed factual issues. *E.g.*, *In re G-I Holdings*, 323 B.R. 583, 615 (Bankr. D.N.J. 2005) ("[I]f a bankruptcy court determines that a personal injury tort or wrongful death claim is allowable as a matter of law, § 157(b)(2)(B) prevents the bankruptcy court from valuing the claim."); *In re Chateaugay Corp.*, 111 B.R. at 76–77 ("On the other hand, a threshold finding that the

claim is sustainable as a matter of law leaves it open for trial elsewhere . . . ."); *In re Dow Corning Corp.*, 215 B.R. 346, 360 (Bankr. E.D. Mich. 1997) (Judicial Code authorizes objections to personal-injury claims only on issues that are "pretrial in nature").

37. The Bankruptcy Court was also correct that the Category 3 and 10 objections trigger factual disputes. The question underlying delayed discovery is when a claimant "discover[ed] the connection between [mental] illness and the acts of misconduct," *Lent v. Doe*, 40 Cal. App. 4th 1177, 1186 (1995), which "is generally a question of fact precluding summary judgment." *Sylve v. Riley*, 15 Cal. App. 4th 23, 26 (1993) (citation omitted). As claimants explained to the Bankruptcy Court, unless a claimant *admits* that he or she discovered the connection earlier, a defendant cannot defeat delayed discovery without a detailed evidentiary presentation. *Infra*, Ex. B. And these issues—what happened to a claimant and how it affected them—are closely related to the underlying personal injuries.

38. As to CMG's notice-based objections, these are based on a single line in a declaration by a CMG executive stating that the objected-to claims "allege abuse by a perpetrator accused for the first time (as to whom no prior notice of abusive conduct existed)." Bankr. Case Doc. No. 991 at 11. Even if it were proper for an insurance executive to testify to facts about which he has no personal knowledge, the question in a negligence-based childhood sexual assault claim is not whether the Diocese had "knowledge of prior sexual misconduct by [the perpetrator] specifically" but rather whether "it was reasonably foreseeable that minors . . . might be sexually molested." *Doe v. Roman Catholic Archbishop of L.A.*, 70 Cal. App. 5th 657, 676 (2021). As claimants also explained, this is an ultimate issue of fact that must be resolved through trial. *Infra*, Ex. A.

39. As under federal law, California law provides a constitutional jury right to personal-injury claimants, *Cowlin v. Pringle*, 46 Cal. App. 2d 472, 475 (1941), and, further, ***all fact issues in such an action must be decided by a jury***. "When the right to jury trial exists, it provides the right to have a jury try and determine issues of fact." *Shaw*, 2 Cal. 5th at 993 (emphasis omitted); *accord* Cal. Code Civ. Proc. § 592 ("In actions . . . for injuries, an issue of fact must be tried by a jury . . . ."); Cal. Evid. Code § 312 ("Except as

otherwise provided by law, where the trial is by jury: (a) All questions of fact are to be decided by the jury."). Referral of fact issues to a referee under California law normally requires consent, Cal. Code Civ. Proc. § 638, and a "question of fact" that arises "upon the pleadings" is expressly prohibited from being taken from a jury and assigned to a referee, *id.* § 639(a)(3); *Cortina v. N. Am. Title Co.*, 120 Cal. App. 5th 1030, 1139 (2026).

40. Nothing in the Bankruptcy Code or Judicial Code strips these rights from personal-injury claimants. To the contrary, Congress has expressly preserved jury rights for this class of claimants. 28 U.S.C. § 1411(a). If a claim cannot be liquidated through claim objections because of section 157(b)(2)(B), as the claims here could not, then section 157(b)(5) says what must happen—they "shall be tried in the district court." *In re G-I Holdings*, 323 B.R. at 615 ("At this juncture, § 157(b)(5) and § 1411(a) direct where such a valuation is to take place and by what procedure—a jury trial in the district court.").

41. Nor does section 157(c)(1), which allows non-core issues *in general* to be referred to bankruptcy courts for recommendation, override the more specific procedure section 157(b) provides for personal-injury claims. "[I]t is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . particularly when the two are interrelated and closely positioned." *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981). Indeed, "to conclude that § 157(c)(1) authorizes the bankruptcy judges to act as a magistrate with respect to these [personal-injury tort] claims for all purposes would render § 157(b)(5) a nullity." *In re UNR Indus.*, 45 B.R. 322, 326 (N.D. Ill. 1984); *In re Chateaugay*, 111 B.R. at 74 (suggestion that "a bankruptcy court would have jurisdiction to enter findings of fact and conclusions of law [on personal-injury claims] subject to *de novo* review by a district court" is "in direct contradiction to the unambiguous statutory language of § 157(b)(5)").

42. This District's General Order 312-E, which does no more than operationalize section 157(a), does not compel a different result. For one, it refers matters to the Bankruptcy Court "unless otherwise ordered by the district court." In any case, this order cannot be applied in a way that violates the Judicial Code or claimants' jury rights.

43. CMG has argued in the past—and likely will again—that the survivor claimants waived their jury-trial rights by filing proofs of claim in the Bankruptcy Case. Bankr. Case Doc. No. 1439 at 20 & n.15 (CMG argument that survivor-claimants waived jury rights). The Supreme Court has held that filing a proof of claim ***in a non-personal-injury action*** submits the claimant to the bankruptcy court's jurisdiction. *Langenkamp v. Culp*, 498 U.S. 42, 44–45 (1990). But neither *Langenkamp* nor any precedent that follows it contends with personal-injury claims or the mandate of section 1411(a) that "this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim." *See In re G-I Holdings*, 323 B.R. at 605 n.30 (interpreting *Langenkamp* to deprive personal-injury claimants of jury trials "would eviscerate and nullify" section 1411); *In re N. Am. Health Care, Inc.*, 544 B.R. 684, 690 (Bankr. C.D. Cal. 2016) (depriving tort claimants of jury rights "would seem to be inconsistent with at least the spirit of 28 U.S.C. § 1411(a)").

* * * *

44. That the Motion seeks to deprive claimants of jury rights is its principal failing, and reason enough to deny it. But its mashup of statutes and procedures leaves other questions unanswered. Even if claim objections could proceed without jury trials, CMG does not say what would happen if the objections are overruled—for example, whether the claims would be released back to the state court or instead remain in limbo in the District Court, including as to nondebtor defendants. In fact, as claimants explained to the Bankruptcy Court, even granting the Category 10 objections in full cannot result in the disallowance of any claims. The Model Complaint includes causes of action that do not include notice of abuse as an element, such as ratification, intentional infliction, and causes of action that rely on a "special relationship" with claimants. *Infra*, Ex. A. Thus, even if these objections are *sustained*, the claims will remain in suspended animation in federal court. Not only would the Motion fail to solve any jurisdictional problems, it would create a host of new ones.

45. Indeed, if all CMG wanted was to obtain legal rulings on claim objections, and if that could be done without a jury, CMG might have moved to withdraw the reference under section 157(d) so the District Court could decide the objections. But a motion to withdraw the reference must be "made as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1007 n.3 (9th Cir. 1997) (citation omitted); *accord, e.g.*, *Laine v. Gross*, 128 B.R. 588, 589 (D. Me. 1991) (motion untimely after six months). CMG could have moved to withdraw the reference sooner than seven months after the Abstention Order. Moreover, this monthslong delay suggests that withdrawal would not be "for cause," but a tactic to gain a litigation advantage against the claimants given the pending stay-relief motion. *See In re Woodside Grp., LLC*, 2010 WL 11596179, at *2 (C.D. Cal. May 21, 2010) (given long delay in seeking withdrawal, "there are also concerns that [the] request is motivated by forum shopping"). If the Motion merely shifts legal rulings from the Bankruptcy Court to this Court, it is an improper motion to withdraw the reference.

46. In effect, that is what the Debtor's "limited joinder" seeks—to round-trip 101 claim objections, 86 of which it never joined—through this Court and land them back in a Bankruptcy Court that has already ruled it cannot hear them, leaving the state-court cases where they are. This relief would amount either to an untimely and improper motion to withdraw the reference or an untimely and improper appeal of the Abstention Order. Either way, it must be denied.

**B. CMG, a nondebtor nonparty, cannot direct where survivor lawsuits are tried**

47. CMG cannot use section 157(b)(5) to direct where litigation it is not a party to should take place. The Motion is an improper attempt to skirt the fact that CMG had no right to remove the cases. Without removal by an authorized party, the Court lacks jurisdiction over the state-court cases; the Motion does not change that.

48. Section 157(b)(5) addresses venue, not jurisdiction: It allows the Court to decide which federal forum—bankruptcy or district court—litigation should take place in. *Stern v. Marshall*, 564 U.S. 462, 480 (2011) ("Section 157(b)(5) does not have the

hallmarks of a jurisdictional decree. . . . instead addressing only where personal injury tort claims 'shall be tried.'"). Section 157 was intended to address the Supreme Court's ruling in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), limiting bankruptcy court jurisdiction under Article III, by "distinguish[ing] between 'when the bankruptcy judge can act as a judge' and 'when he acts only as a special master.'" *In re Marshall*, 600 F.3d 1037, 1053 (9th Cir. 2010) (citation omitted), *aff'd*, *Stern*, 564 U.S. 462. Before deciding a section 157(b)(5) motion, courts first address whether they have been vested with jurisdiction in the first place—*i.e.*, whether any cases were properly removed. *E.g.*, *Weirick v. Brenntag N. Am., Inc.*, 2019 WL 1976436, at *3 n.2 (C.D. Cal. May 3, 2019) (citing *Stern*, 564 U.S. at 478–79) ("[Section 157(b)(5)] governs venue, not jurisdiction. The issue before the Court is whether removal jurisdiction is proper."); *Kerkhof v. Johnson & Johnson*, 602 B.R. 928, 931 (D. Md. 2019) ("[N]o impediment exists to this Court deciding the more fundamental question presented—the propriety of removal in the first instance.").

49. Absent removal of a state-court case by a party authorized to remove it, federal courts lack subject-matter jurisdiction. *E.g.*, *Sharma v. HSI Asset Loan Obligation Tr. 2007-1*, 23 F.4th 1167, 1171 n.2 (9th Cir. 2022) (holding that "a district court has no authority to assert jurisdiction over a state court action that was not properly removed" under section 1441); *Tanha v. Macy's Inc.*, 2013 WL 1365953, at *3 (N.D. Cal. Apr. 3, 2013) (where party attempting removal had no standing to do so, "the Court lacks subject matter jurisdiction"). Section 1452(a), the removal statute addressing bankruptcy jurisdiction, provides that "[a] ***party*** may remove any claim or cause of action." (Emphasis added.) "[S]omeone who is not a party to the state court action cannot remove it under 28 U.S.C. § 1452(a), and the removal by a non-party does not vest the federal court with subject matter jurisdiction." *Kilburn v. Patterson*, 2024 WL 3833664, at *2 (C.D. Cal. Aug. 15, 2024) (citation omitted). Section 157(b)(5), as a *venue* statute, does not provide an alternative basis to bring pending state-court suits into federal court. *E.g.*, *Kadel v. Thompson*, 84 B.R. 878, 881 (N.D. Ga. 1988) ("[S]ection 157(b)(5) was not intended to

expand federal court jurisdiction nor strip state court jurisdiction but rather was intended to specifically limit what the bankruptcy courts shall have the power to hear.”).

50. Here, CMG's unauthorized removal attempt does not vest this Court with jurisdiction, and CMG cannot use section 157(b)(5) to accomplish what section 1452(a) forbids. The Debtor joined CMG's request that the Court “take jurisdiction of proofs of claims . . . and certain objections thereto,” and then “refer the objections” back to the Bankruptcy Court, Doc. No. 7 at 2, but does not request that any cases be transferred under section 157(b)(5), and the Debtor has not removed any cases from state court. The Motion is thus CMG's attempt to skirt section 1452 by seeking to “transfer” cases it cannot remove. But the use of section 157(b)(5) by a nondebtor who is not a party to the underlying litigation is unheard of. On occasion, nondebtors ***who are party to state-court lawsuits***—and who thus can remove the actions—have moved to transfer cases to the district where a bankruptcy is pending, but courts are hostile even to these attempts. *E.g.*, *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 716 (D. Del. 2006) (“[I]n the vast majority of those cases in which nondebtors have requested transfers, courts have remanded the matter after removal, or abstained . . . .”); *Drew v. ALG Senior, LLC*, 2022 WL 3755852, at *3 (Bankr. M.D. Ala. Aug. 29, 2022) (“As a non-debtor defendant, ALG's argument that a co-defendant's bankruptcy will be affected . . . is not compelling.”); *In re Eight Adv. Proceedings Removed from State Ct.*, 603 B.R. 849, 854–55 (Bankr. S.D. Fla. 2019) (“J&J obviously believes it will be more efficient for it to defend all 2,400 cases in a single forum, but it is the efficient administration of the Imerys Bankruptcy Case that matters, not the cost and convenience to J&J.”).

51. Here, the attempted transfer is one step removed even from ***these*** cases, because CMG is not only not a debtor in bankruptcy, it is not even a party to the litigation sought to be transferred. That makes this case profoundly unlike the ones CMG cites. For example, CMG relies on *In re Metabolife Int'l*, 2005 WL 8173410 (S.D. Cal. Nov. 3, 2005) (cited Mot. at 20). But that case is unlike this one in almost every way. There, it was the *debtors in possession* that sought transfer, and the creditors' committee *agreed* that the

district court was the "proper forum." *Id.* at *1. The purpose of the transfer there was to consolidate cases scattered across state and federal courts in 26 states, *id.* at *4, whereas the cases here are already consolidated. Moreover, the debtors in that case specifically told the court that "it is unlikely that the [personal-injury] claims will go to trial," but rather the claims were being consolidated "so that a global process for resolving the claims can be established . . . as part of a chapter 11 plan." *See* RJN Ex. 6 at 12 (Metabolife debtors' memorandum of law in support of transfer). The transfer sought in *Metabolife* was an agreed procedure with the creditors' committee in aid of a global settlement then in progress, not an attempt to adjudicate claims in the bankruptcy court. In contrast here, there is no such agreement or settlement, and CMG seeks actual adjudications of select claims outside the auspices of any chapter 11 plan.

52. CMG thus has not provided a single case, nor is the Committee aware of any, where a nonparty has even *attempted* to unilaterally transfer a case under section 157(b)(5), much less won this relief. There is no sanctioned procedure under the Judicial Code or otherwise for a nondebtor to dictate the forum for litigation to which it is not a party. Indeed, even the Debtor's halfhearted joinder to the Motion does not cure the basic procedural defect that no party has removed the cases, meaning there is nothing to transfer and nothing to refer to the Bankruptcy Court.

53. Moreover, contrary to CMG's insistence that transfer under section 157(b)(5) is "mandatory," Mot. at 16, 18, the statute recognizes "discretion in district courts to leave personal injury cases where they are pending." *In re Pan Am Corp.*, 950 F.2d at 844. In fact, the vast majority of mass-tort bankruptcy cases do *not* involve transfers of personal-injury claims to the federal court where the bankruptcy is pending. *E.g.*, S. Elizabeth Gibson, FED. JUD. CTR., *Judicial Management of Mass Tort Bankruptcy Cases* 19 (2005) ("This special treatment of personal injury tort and wrongful death claims does not necessarily mean, however, that all of the thousands of such claims against the debtor must be tried to a jury in district court. . . . Thus, it is likely that most of the mass tort claims will never have to be tried in the district court."). Rather, the goal of every chapter 11 case

is to achieve a global, *pro rata* resolution of the estate's liability through a plan of reorganization, not individual litigation of claims. *E.g.*, 7 Collier on Bankruptcy ¶ 1129.01 (16th ed. 2026) ("Confirmation of a plan of reorganization is the statutory goal of every chapter 11 case."); 11 U.S.C. § 1129(a); Valdivia Decl. ¶ 56 (Bankruptcy Case filed "to expeditiously reach resolution of all claims and propose and confirm its plan of reorganization"). Transfer and federal litigation of state-law causes of action is the exception, not the rule. For example, five other diocesan bankruptcy cases have been filed in California since 2023. None of the personal-injury tort claims against those debtors have been transferred to federal district court under section 157(b)(5) or otherwise.

54. In short, the Motion is a procedurally defective end-run around the bankruptcy removal statute and does not vest this Court with jurisdiction over any claims. These cases, if they move forward, belong in the state court where they were filed.

**C. The Court should abstain from CMG's attempt to fracture estate litigation**

55. Even assuming the Motion vested the Court with jurisdiction, the Court should use its discretion to send the cases right back to the JCCP where they belong.

56. Because no cases have been removed, parallel proceedings remain open in the JCCP, and the proper procedure is abstention, rather than remand.[4] Indeed, courts have repeatedly held that a section 157(b)(5) motion triggers an abstention analysis. *E.g.*, *In re Pan Am*, 950 F.2d at 844 ("A motion under section 157(b)(5), therefore, requires an abstention analysis."); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 444 (5th Cir. 2001) (similar).

---

[4] To the extent the Court interprets the Motion as removing the cases, the Court should remand them. 28 U.S.C. § 1452(b) (authorizing remand of cases removed under bankruptcy jurisdiction "on any equitable ground"). The remand analysis under section 1452 is identical to the abstention analysis provided herein. *See In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 761–62 (Bankr. S.D. Cal. 2007) ("[C]ase law has imported the 'factors' governing discretionary abstention to assist with the remand decision."); *In re Anderson*, 670 B.R. 528, 546 (Bankr. S.D. Ohio 2025) (citation omitted) ("The factors to be considered by the district court when determining whether permissive abstention or equitable remand is appropriate are virtually the same.").

A district court may abstain from any bankruptcy proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).

57. The Ninth Circuit has supplied a 12-factor analysis for when abstention under section 1334(c)(1) is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Tucson Estates*, 912 F.2d 1162, 1167 (9th Cir. 1990) (citation omitted).

58. In conducting this analysis, the Court is not writing on a blank slate. The Bankruptcy Court has already decided it was the wrong venue for the claims. Moreover, during its 2007 bankruptcy, the Debtor removed 127 sex abuse cases following the earlier statute-of-limitations revival legislation, and claimants moved to remand 42 of them. *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 757 (Bankr. S.D. Cal. 2007). That dispute involved remand, not abstention, but the bankruptcy court applied the *Tucson Estates* factors; it concluded that it was "likely that the Debtor is forum shopping" and "the equities overwhelmingly favor remand." *Id.* at 764. If these factors "overwhelmingly" favored remand in 2007 when the *Debtor* sought removal, that conclusion is all the more unavoidable where the proponent of transfer is the Debtor's insurer.

59. Many of these factors could hardly be more straightforward. The claims are based entirely on state law, as are the Category 3 and 10 objections. These objections raise difficult and unsettled issues, as evidenced by the many pages of briefing and the

Bankruptcy Court's holding that they trigger factual disputes. A parallel proceeding exists as to most of the claims.[5] Section 1334 is the only basis for federal jurisdiction. The Bankruptcy Court has already found, and CMG does not dispute, that the Category 3 and 10 objections are non-core under section 157(b)(2)(B). As discussed in Section A, *supra*, the claims sought to be liquidated can only be determined through jury trials. And CMG seeks to sweep into federal court claims against dozens of nondebtor defendants.

60. The rest of the factors also favor abstention and/or remand:

61. ***Effect on the administration of the estate.*** CMG argues that "[c]onsolidation of these claims and cases through transfer will promote the effective administration of the estate." Mot. at 20. CMG is not consolidating the claims but dividing them. It provides no indication why three forums would be more efficient than two, why federal court is more efficient than state court, or why trying 101 cases would help administer the estate.

62. Even if these claims could be resolved through a revived claim-objection process, that process has so far resulted in the final disallowance of just six of the most vulnerable and supposedly lowest-value claims on purely legal grounds. The 101 claims that CMG seeks to transfer raise factual issues, meaning they would only be more intensive to litigate. The claims would have to be heard twice—in the Bankruptcy Court and then in this Court *de novo*, subject to jury factfinding—rather than just once in state court. Thus, even if CMG's proposed procedures were lawful, it would take years to resolve these claims, all for extremely dubious benefit for the estate.

63. ***Relatedness to the main bankruptcy case.*** CMG states briefly in the Motion that claims disallowance "will help in assessing the estate's liabilities and in formulating a plan of reorganization." Mot. at 20. This claim is specious, given that CMG says it seeks to liquidate what it believes are the lowest-value claims. But even if this were true, there

---

[5] As to the 11 claimants who have not filed suit, the Motion functionally seeks to withdraw the reference. As discussed above, this request is not "timely" or "for cause."

is no reason why the federal courts should be the forum for liquidating state-law tort claims. That task can be carried on in state court without detracting in the least from the Bankruptcy Court's (or this Court's) functions. *See In re Roman Catholic Bishop of San Diego*, 374 B.R. at 763 ("Although the actions are related to the bankruptcy in the sense of fixing liability amounts against the Debtor; they are not related in any way that bears upon the Debtor's day-to-day operation of its religious, educational and charitable missions.").

64. ***Feasibility of severing state law claims.*** The state-court cases were pending for years prepetition. Any issues CMG wishes to have heard can be heard in state court, with judgment enforcement stayed. *In re Roman Catholic Bishop of San Diego*, 374 B.R. at 763 ("It is feasible to remand these 42 actions for liquidation in the state court, but to reserve the bankruptcy issues of claim treatment to the bankruptcy court.").

65. ***Burden on the federal court's docket.*** Litigating 101 jury trials would be burdensome. *In re Roman Catholic Bishop of San Diego*, 374 B.R. at 763–64 ("[T]he pre-trial management of the actions would be a burden on either the bankruptcy court or the district court. In the event of trials, it would be enormously burdensome for the district court to try all 127 of the cases."). Moreover, it would be an abuse of judicial economy to sever trials from a court where they have made significant, coordinated progress—and which has recently said it has availability to try cases—to start anew in federal court.

66. ***Forum shopping.*** The most basic problem with the Motion is that CMG does not articulate a rational basis for trying these claims in federal court. The state court has been managing these cases since 2020, has extensive experience trying state-law tort claims, has implemented special procedures to do so here, has conducted dispositive-motion and discovery practice, and is currently moving forward with cases against the San Bernardino diocese. There is no reason it cannot hear any state-law issues in a consolidated venue. Considering the lack of a rationale for federal jurisdiction, the only explanation is that CMG is forum shopping. *Cf. In re Roman Catholic Bishop of San Diego*, 374 B.R. at 764 ("It appears the Debtor is hoping for a far better result in the federal forum than the Dioceses have thus far historically achieved in the state court forum.").

67. In fact, CMG only sought to assert its defenses in federal court after it failed to obtain its desired results in state court. The Debtor (whose defense CMG controls) has *already* brought demurrers in the JCCP, including based on its lack of notice of the abuse, which the state court overruled. RJN Ex. 3 at 9; Mot. Ex. 2. If CMG wishes to see the demurrer revived, the state court is the proper forum to do it. But it should not be allowed to shop its arguments to different courts in the hopes of a more favorable reception.

68. The Motion's timing bolsters this conclusion. If CMG truly believed that there was a basis for federal jurisdiction, it could have sought a transfer immediately after the Abstention Order. That it waited seven months, and only filed the Motion after the Committee's renewed stay-relief motion created the prospect of jury trials in state court, suggests that its sole aim is to avoid a state-court liquidation of its indemnity obligations.

69. Finally, in deciding whether to exercise its discretion under section 157(b)(5), the Court should consider that statute's purpose. *E.g.*, *Hopkins*, 342 B.R. at 716 ("[T]he Court is compelled in light of the specific circumstances in this case to discuss an additional factor; specifically, the purpose and use of Section 157(b)(5)."). All the landmark cases CMG cites make clear that "the manifest purpose of section 157(b)(5) was to centralize the administration of the estate and to eliminate the multiplicity of forums for the adjudication of parts of a bankruptcy case." *In re Pan Am*, 950 F.2d at 845 (citation and internal quotation marks omitted); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) (similar); *In re Dow Corning Corp.,* 86 F.3d 482, 496 (6th Cir. 1996) (same).

70. CMG professes that that is what it is trying to do here—"to consolidate these objected-to claims before this District Court." Mot. at 13. But the claims ***have already been consolidated*** in the JCCP, as CMG acknowledges. *See* Mot. at 23 ("The state court actions were consolidated in JCCP 5105 . . . ."). Far from consolidating cases, CMG seeks to pluck 90 claims out of state court—but not the other 367 claims pending in the JCCP—so these claims can be heard in federal court using CMG's truncated procedure. Section 157(b)(5) lends no support to this attempt. The Court should abstain.

**D. CMG has not justified subject-matter jurisdiction over the nondebtor claims**

71. Even if the Court chose to transfer the claims *against the Debtor*, it lacks jurisdiction over the nondebtor defendants named alongside the Debtor in the state-court actions. CMG describes these claims merely as "state court actions against the Diocese's co-defendants, such as parishes." Mot. at 23. However, the nondebtor defendants also include diocesan high schools, other dioceses, religious orders, a school district, other secular institutions, and entities in Texas, Utah, Kansas, Illinois, and elsewhere. *Id.* Ex. 1.

72. CMG has the burden of establishing jurisdiction over the nondebtor claims. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008). Here, because these lawsuits are not cases "under title 11," "arising under title 11," or "arising in . . . cases under title 11," the Court has jurisdiction over them only if they are "related to" the bankruptcy case. *See* 28 U.S.C. § 1334(a), (b).

73. CMG quotes *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), stating that "[a] civil proceeding is related to bankruptcy whenever 'the outcome of the proceeding could conceivably have any effect on the estate being administered.'" Mot. at 22 (emphasis omitted). "Broadly worded as that is, however, related-to jurisdiction 'is not without limitation.'" *In re W.R. Grace & Co.*, 591 F.3d 164, 171 (3d Cir. 2009) (citation omitted); *Pacor*, 743 F.2d at 994 ("the mere fact that there may be common issues of fact" does not justify bankruptcy jurisdiction); *In re Houghton*, 164 B.R. 146, 147 (Bankr. W.D. Wash. 1994) (citation omitted) ("[I]nvolvement of multiple defendants in a common set of facts . . . is sufficient to satisfy the . . . joinder of persons, but, by itself, does not supply federal subject matter jurisdiction over the controversy involving the other defendants.").[6]

---

[6] CMG has not cited 28 U.S.C. § 1367(a) as a basis for jurisdiction here. *But see In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005). To the extent CMG makes this argument for the first time in reply, that belated showing would be insufficient. *See In re Imerys Talc Am., Inc.*, 2019 WL 3253366, at *6 (D. Del. July 19, 2019) (discounting information and argument on "related to" jurisdiction in reply).

74. Here, all CMG has alleged is that "there may be common issues of fact" between debtor and nondebtor claims. *Pacor*, 743 F.2d at 994. CMG's only two specific jurisdictional allegations are (1) that the Model Complaint in the JCCP alleges that "[e]ach Defendant is the agent, servant and/or employee of other Defendants"; and (2) that the Coordination Court supposedly "held that claims against the parishes . . . survived demurrer only because of a possible successor liability theory," Mot. at 23–24. Obviously, boilerplate language in the Model Complaint cannot be the basis for jurisdiction. Besides, the Model Complaint alleged that each codefendant was "***either independently liable for its own conduct . . . and/or*** is liable as a successor in interest." RJN Ex. 2 at 17 (emphasis added). And CMG misreads the demurrer order, which held that certain defendants "may be liable based on a theory of successor liability," not that they may never be found liable on any other theory. Mot. Ex. 2 at 24. A finding on the pleadings that the parishes are subject to one possible theory of liability is a far cry from extinguishing every other theory. In any case, parishes also are not the only codefendants; CMG also seeks to transfer claims against other secular and religious institutions, both within this state and outside of it. As to these parties, CMG has made no jurisdictional showing whatsoever.

75. Even if these defendants *could* be hauled into federal court, the claims-allowance process deals only with claims against the Debtor. *E.g.*, 11 U.S.C. § 101(10) (defining creditor as an "entity that has a claim against the debtor"). The claims against nondebtors cannot be resolved through that process. Thus, CMG's proposal is to shift the nondebtor claims to federal court with no plan for how or whether they will ever be resolved there. The Motion is at odds not just with the law, but also good sense.

## **Conclusion**

76. CMG attempts to twist the text and purpose of section 157 to extinguish claimants' jury rights and avoid state-court trials at all costs. Even if this attempt were otherwise procedurally or substantively proper (it plainly is not), there is every reason for the Court to abstain. The Court should deny the Motion.

Respectfully submitted,

DATED: November 16, 2026

**KTBS LAW LLP**

By: */s/Sasha M. Gurvitz*

Thomas E. Patterson
Daniel J. Bussel
Samuel M. Kidder
Sasha M. Gurvitz
KTBS Law LLP
1801 Century Park East, 26th Floor
Los Angeles, CA 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: tpatterson@ktbslaw.com
dbussel@ktbslaw.com
skidder@ktbslaw.com
sgurvitz@ktbslaw.com

*Counsel to the Official Committee of Unsecured Creditors*

**Index of Exhibits**

| | |
|---|---|
| A | Reply of Certain Claimants Represented by the Zalkin Law Firm LLP in Support of Motion of the Official Committee of Unsecured Creditors and Certain Claimants for Abstention from or Stay of Claim Objections, *In re Roman Catholic Bishop of San Diego*, No. 24-bk-02202, Doc. No. 1479 (Bankr. S.D. Cal. Jan. 20, 2026) |
| B | Reply of Certain Abuse Claimants Represented by Jeff Anderson & Associates in Support of the Motion of the Official Committee of Unsecured Creditors and Certain Claimants for Abstention from or a Stay of Claim Objections, *In re Roman Catholic Bishop of San Diego*, No. 24-bk-02202, Doc. No. 1490 (Bankr. S.D. Cal. Jan. 20, 2026) |