# Exhibit A

Irwin M. Zalkin, SBN 89957
Devin M. Storey, SBN 234271
Alexander S. Zalkin, SBN 280813
Hunter Haddock, SBN 355050
The Zalkin Law Firm, LLP
10590 West Ocean Air Drive, Suite 175
San Diego CA 92130
Tel: 858-259-3011
Fax: 858-259-3015
Email: irwin@zalkin.com
dms@zalkin.com
alex@zalkin.com
hunter@zalkin.com

*Counsel to Claimants No. # 20059, 20061, 20064, 20076, 20089, 20091, 20094, 20122, 20123, 20124, 20130, 20131, 20132, 20133, 20729, 20138, 20140, 20141, 20659, 20669, 20670, 20726, 20728, 20729, 20133, 20730, 20731, 20734, 20736, 20737, 20760, 20762, and 20775*

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

In re:

THE ROMAN CATHOLIC BISHOP OF SAN DIEGO, a California Corporation Sole,

Debtor.

Case No. 24-02202-11

Chapter 11

**REPLY OF CERTAIN CLAIMANTS REPRESENTED BY THE ZALKIN LAW FIRM LLP IN SUPPORT OF MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND CERTAIN CLAIMANTS FOR ABSTENTION FROM OR STAY OF CLAIM OBJECTIONS**

Re: Dkt. 1355, 1435, 1439

Date: February 11, 2026
Time: 10:30 a.m.
Judge: Hon. Christopher B. Latham
Dept.: 1

## TABLE OF CONTENTS

Table of Contents……………………………………………………………………...…….i

Table of Authorities………………………………………………………..………...….ii, iii

Jurisdiction and Reservation of Rights……………………………………………...…….1

Reply……………………………………………………………………………………...…1

A. CMG's Objection No. 7 Fails to Address Every Cause of Action Asserted in Each Claimant's Proof of Claim and Could Not Result in the Disallowance of Any Claim in Its Entirety……………………………………………………………………2

1. Prior Perpetrator-Specific Notice is Not Essential to a Cause of Action Grounded in Ratification (Cause of Action No. 5)………………………………………….…………….4

2. Post-Abuse IIED is Not Grounded on Any Fact Occurring Before the Assault (Cause of Action No. 6)………………………….……….5

3. Claimants' Cause of Action Alleging Negligent Failure to Protect is Not Dependent Upon a Finding of Perpetrator-Specific Prior Notice (Cause of Action No. 1)…………………………….……………………….5

4. Claimants' Fourth Cause of Action Asserting Negligent Failure to Warn Train or Educate is Likewise Special Relationship Based and Requires No Perpetrator-Specific Notice (Cause of Action No. 4)……………….……….9

B. Notice is a Factually Intensive Inquiry and Catholic Mutual Has Not Provided Any Evidence Defeating Notice in Any Case……………………………………………….…….9

Additional Objections and Arguments…………………………………..……………..13

Conclusion ..........................................................................................................................15

Index of Exhibits…………………………………………………………………………..17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. v. Tamalpais Union High School District,*
(2024) 105 Cal.App.5th 340……10

*Brown v. USA Taekwondo,*
(2021) 11 Cal.5th 204……*passim*

*Crouch v. Trinity Christian Center of Santa Ana, Inc.*
(2019) 39 Cal.App.5th 995……3, 5

*C.A. v. William S. Hart Union H.S. Dist.*,
53 Cal.4th 861 (2012)……10

*C.R. v. Tenet Healthcare Corp.,*
(2009) 169 Cal.App.4th 1094……4

*Doe v. Lawndale Elementary School Dist.,*
(2021) 72 Cal.App.5th 113……*passim*

*Doe v. Roman Catholic Archbishop of Los Angeles,*
(2021) 70 Cal.App.5th 657 ("RCALA") ……*passim*

*Ericsson v. Nunnink,*
(2011) 191 Cal.App.4th 826……11

*Evan F. v. Hughson United Methodist Church,*
(1992) 8 Cal.App.4th 828) ……3, 11

*In re Roman Catholic Diocese of Rockville Ctr.*,
651 B.R. 146 (Bankr. S.D.N.Y. 2023)……4

*Juarez v. Boy Scouts of America,*
(2000) 81 Cal.App.4th 377……*passim*

*Lopez v. Watchtower Bible and Tract Society of New York, Inc.*,
(2016) 246 Cal.App.4th 566……8

*Murillo v. Rite Stuff Foods,*
(1998) 65 Cal.App.4th 833……4

*Ratcliff v. Roman Catholic Archbishop of Los Angeles*
(2022) 79 Cal.App.5th 983……3, 4

**TABLE OF AUTHORITIES**
**(continued)**

*Regents of University of California v. Superior Court*,
(2018) 4 Cal.5th at 629……………………………………………………..………..7

*Roe v. Doe 1*,
98 Cal. App. 5th 965 (2023)………………………………………………………..14

*Rowland v. Christian,*
(1968) 69 Cal.2d 108…………………………………………………….……*passim*

*Safechuck v. MJJ Productions, Inc.*,
(2023) 94 Cal.App.5th 675………………………………………………………..3, 6

**STATUES**

Cal. Code Civ. Proc. § 340.1……………………………………..………………………..14
Rest. 2d (Torts) § 12(2)……………………………………………………………………....10
Rest. (2d) of Agency § 213 at com. d.………………………………………………………..11
United States Constitution, 11 U.S.C. § 157(b)………………………………………………1
United States Constitution, 28 U.S.C. § 1411………………………………………………....1

The claimants identified below, represented by The Zalkin Law Firm LLP[1] respectfully submit this reply in support of the Motion of the Official Committee of Unsecured Creditors and Certain Claimants for Abstention from or Stay of Claim Objections [Dkt. 1355] (the "**Motion**") and in response to the oppositions filed by the Debtor [Dkt. 1435] and Catholic Mutual [Dkt. 1439].[2]

**Jurisdiction and Reservation of Rights**

1. Pursuant to 11 U.S.C. § 157(b), the undersigned claimants do not consent to entry of final judgment or final order by the Bankruptcy Court with respect to any objections to their claims and, further, hereby assert and reserve all rights to a trial by jury under the Seventh Amendment of the United States Constitution, 28 U.S.C. § 1411, and all other applicable law.

**Reply**

2. The undersigned claimants have filed child sex-abuse claims against the Debtor in this bankruptcy case, whose claims have been objected to by the Debtor and/or Catholic Mutual. The undersigned claimants joined in and adopted the Motion and all arguments made therein. As further described below, the undersigned claimants adopt the arguments related to claim objections made by other claimants and the Committee.

3. The purpose of this reply, however, is not to address the claim objections filed against any particular claimant.[3] This reply instead addresses the cost, delay and ultimately, futility, of moving forward with Catholic Mutual's "Objections to Category 7 Claims," *see* Dkt. 991, which argues that the Diocese cannot be liable for abuse by perpetrators allegedly accused for the first time. Undersigned counsel represents eight claimants whose claims have been objected to on this basis. Adjudicating these claims will not aid in a resolution of this case for two related reasons.

---

[1] To fully preserve the rights of all claimants, the claim numbers reflected in the signature block include all duplicate and amended claim numbers by which claimants subject to objections may be identified.

[2] Terms capitalized but not defined herein have the meaning ascribed to them in the Motion.

[3] The undersigned claimants reserve all rights with respect to the claim objections, including, without limitation, with respect to Catholic Mutual's standing to pursue claim objections.

4. First, the Model Complaint adopted at the trial court level by each survivor included causes of action for which "notice" is not a necessary element. Consequently, even if CMG were to succeed in showing there were no prior accusations as to certain perpetrators, the most that could be accomplished would be to eliminate two of several legal theories advanced by particular claimants while not affecting the other causes of action asserted by those same claimants. A lack of "notice" alone does not warrant disallowance of *any claim* in its entirety. Thus, adjudicating these claim objections will not change the "denominator" for settlement.

5. Second, to the extent certain claims do require "notice," Catholic Mutual's understanding of that concept is inconsistent with California law. "Notice" does not equate to a prior complaint. These causes of action can be supported by actual *or constructive* knowledge of the danger posed by the abuser, which can be proven by complaints in the Debtor's files, witness testimony, or events that should have been known by the Debtor, even if there is no evidence that those facts were actually known. A claimant could reasonably be expected to pursue written discovery from Catholic Mutual, subpoenas to the Debtor and individual parishes to which the abuser was assigned, as well as in some cases subpoenas to other religious organizations that previously or subsequently employed the abuser. Each claimant would be expected to take depositions of Debtor's agents as well as third parties. It would be expensive and burdensome to conduct the necessary discovery. And, because the "notice" objection is not dispositive of all causes of action stated in the Model Complaint, this invites an extensive litigation process that would likely be followed by another set of objections to the same claims on other bases.

**A. CMG's Objection No. 7 Fails to Address Every Cause of Action Asserted in Each Claimant's Proof of Claim and Could Not Result in the Disallowance of Any Claim in Its Entirety.**

6. The Model Complaint, which the Coordination Court required each plaintiff in the coordinated state-court proceeding to adopt, stated seven basic causes of action, as well as two optional causes of action. (Ex. 1, JCCP 5105 CMO at Ex. A, Master Complaint.) Directly contrary to CMG's assertions that there are only two avenues to establish entity liability for sexual torts

committed by an agent (CMG Cat 7 Obj. at 5), *California caselaw recognizes at least six separate legal theories in childhood sexual abuse actions*:

- cause of action 1) negligence based on a failure to protect (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657 ("*RCALA*"); *Safechuck v. MJJ Productions, Inc.* (2023) 94 Cal.App.5th 675, 690-69; *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 127;
- cause of action 2) negligent supervision / failure to warn (*Evan F. v. Hughson United Methodist Church* (1992) 8 Cal.App.4th 828);
- cause of action 3) negligent hiring / retention (*ibid*);
- cause of action 4) negligent failure to warn, train or educate plaintiff (*Juarez v. Boy Scouts of America* (2000) 81 Cal.App.4th 377, 409-410;
- cause of action 5) sexual assault via ratification ("ratification") (*Ratcliff v. Roman Catholic Archbishop of Los Angeles* (2022) 79 Cal.App.5th 983, 1003;
- cause of action 6) post abuse Intentional Infliction of emotional distress ("IIED") (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995.[4])

7. To disallow any claim in its entirety, CMG would need to negate each one of these causes of action. But only two of these causes of action (negligent hiring and negligent supervision) require some variant of notice of the risk posed by a particular perpetrator, and CMG's analysis seemingly aims only at these two causes of action. As discussed below, each claimant has asserted at least four *other* causes of action for which perpetrator-specific actual or constructive knowledge is not an element. CMG's objection to this category of claims is analogous to a motion to dismiss aimed at only two of seven causes of action in a complaint. At most, CMG's approach could result

[4] The sixth cause of action in the Model Complaint also includes a pre-abuse IIED claim, and the seventh cause of action asserts a cause of action for fraud. Both are legally supportable but have not been expressly applied in a published appellate decision in a childhood sexual abuse case.

in some claimants stating two fewer theories of liability against Debtor. Under California law, *no claim can be disallowed in its entirety based solely on a lack of "notice."*[5]

8. Since CMG's objection does not dispose of any claim, the objection would do nothing to solidify the "denominator" as CMG argues is necessary here. Instead, to reduce the denominator by even one claim, CMG would be required to file another round of objections aimed at the claimants' other theories of liability, which would result in another round of costly and broader discovery and indefinite delay. Hearing CMG's Objection No. 7 would not advance this case.

**1. Prior Perpetrator-Specific Notice is Not Essential to a Cause of Action Grounded in Ratification (Cause of Action No. 5).**

9. Each claimant has alleged the Diocese is liable on a ratification theory, in the Model Complaint's Fifth Cause of Action. A principal may be liable for an agent's act where the employer *subsequently* ratified an originally unauthorized tort. (*C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1110.) "Evidence of the ratification may come in many forms, for example where an employer fails to terminate, investigate, or respond to charges that an employee has committed an intentional tort." (*Ratcliff*, 79 Cal.App.5th at 1003.) Retention of an employee after knowledge of the employee's conduct or an opportunity to learn of the conduct may support an inference of ratification. (*Murillo v. Rite Stuff Foods* (1998) 65 Cal.App.4th 833, 852.) Whether an employer ratified an agent's conduct *is a factual question*. (*C.R.*, 169 Cal.App.4th at 1111.)

10. Ratification retroactively confers authority for an act and thereby brings the act within the scope of the abuser's employment. (*Ratcliff*, 79 Cal.App.4th at 1002-1003 ["the effect of which is to treat the act as originally authorized by the ratifier"].) As a matter of course, ratification occurs *after* an assault and is not dependent on prior knowledge. This claim will survive even if CMG's

[5] This fact makes this case fundamentally different from the Rockville Centre diocese bankruptcy on which Catholic Mutual relies. There, applying New York law, the court held that "there is no theory of direct negligence for sexual abuse claims against an employer that would excuse a Claimant from pleading and proving notice." *In re Roman Catholic Diocese of Rockville Ctr.*, 651 B.R. 146, 161 (Bankr. S.D.N.Y. 2023). That is not true under California law.

objections to "Category 7" claims are sustained. Thus, litigating these objections will not result in the disallowance of any claims or advance this case.

**2. Post-Abuse IIED is Not Grounded on Any Fact Occurring Before the Assault (Cause of Action No. 6).**

11. Each claimant has alleged the Diocese is liable on an intentional infliction of emotional distress (IIED) theory, in the Model Complaint's Sixth Cause of Action. Like ratification, IIED does not necessarily condition a defendant's liability on any level of foreknowledge about an abuser's propensity to sexually abuse but can instead be based on the defendant's conduct *after* learning of acts of sexual abuse by the molester.

12. In *Crouch v. Trinity Christian Center of Santa Ana, Inc.* the plaintiff was drugged and raped by a church employee. ((2019) 39 Cal.App.5th 995, 998.) When the plaintiff reported the abuse to her grandmother, who was a church director, her grandmother yelled at her, told her she was stupid, and that it was her fault. (*Ibid.*) The court of appeal affirmed a verdict in the plaintiff's favor for *post-abuse IIED* resulting from her grandmother's *actions after* the rape. The court explained:

> Flying into a tirade at a 13-year-old girl who had been drugged and raped and yelling at her that she was stupid and it was her fault is extreme and outrageous conduct that exceeds that bounds of decency tolerated in a civilized community. Such conduct is not mere insults, indignities, petty oppressions or other trivialities. At age 13, Carra suffered a horrible, traumatic, and life-altering experience. Yelling at her that she was stupid and it was her fault was cruel, intolerable, and obviously certain to produce severe emotional harm.

(*Id.* at 1007-1008.)

CMG's Objection to Category 7 Claims does nothing to negate this cause of action and so cannot result in the disallowance of any claims.

**3. Claimants' Cause of Action Alleging Negligent Failure to Protect is Not Dependent Upon a Finding of Perpetrator-Specific Prior Notice (Cause of Action No. 1).**

13. The first cause of action in the Model Complaint alleges breach of a duty to protect arising from the Debtor's special relationship with the claimant. Catholic Mutual mentions the concept of a special relationship (CMG Cat. 7 Objection at 7-8) but conflates the special relationship

analysis with perpetrator-specific prior notice, which is inconsistent with settled California law. At its core, if the Debtor was in a special relationship with a claimant, then neither actual nor constructive knowledge of the threat posed by the specific perpetrator is required.

14. In 2021, the Supreme Court of California clearly explained how to analyze duty to protect issues in connection with a child sexual abuse action in *Brown*. (*See*, *e.g.*, 11 Cal.5th 204. In *RCALA* the court applied those considerations to a claim against a Catholic Archdiocese and expressly rejected positions identical to CMG's positions in its Category 7 Objection. The analysis is clear and well established:

> "*Brown* directs a two-step inquiry. First, the court must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect. Second, if so, the court must consult the factors described in *Rowland* [*v. Christian* (1968) 69 Cal.2d 108] to determine whether relevant policy considerations counsel limiting that duty"].)

(*Safechuck*, 94 Cal.App.5th at 690-691; *Lawndale*, 72 Cal.App.5th at 127; *RCALA*, 70 Cal.App.5th at 673.) A special relationship imposes the duty to protect, independent of any actual or constructive notice about a perpetrator's propensity to abuse. (*Brown*, 11 Cal.5th at 220.)

15. To avoid the duty to protect, Catholic Mutual would need to analyze the *Rowland* factors to establish why public policy considerations should negate the duty resulting from the special relationship.[6] (*Brown*, 11 Cal.5th at 218 ["when a special relationship gives rise to an affirmative duty to protect, a court must still consider whether the policy considerations set out in *Rowland* warrant a departure from that duty in the relevant category of cases"].) "In considering [the *Rowland* factors], we determine 'not whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy." (*Brown*, 11 Cal.5th at 221,

---

[6] The *Rowland* factors are "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Lawndale*, 72 Cal.App.5th at 127.)

quoting *Regents*, 4 Cal.5th at 629.) In child abuse cases, several courts have done the balancing and found the *Rowland* factors do not support an exception to the duty to protect. (*See RCALA*, 70 Cal.App.5th 682-683; *Doe v. Lawndale*, 72 Cal.App.5th at 137; *Brown*, 11 Cal.5th at 222.)

16. Catholic Mutual did not conduct this analysis. It instead focused on only one of the *Rowland* factors, foreseeability. But in doing so, Catholic Mutual erred both in considering foreseeability to be an absolute prerequisite to liability, and in wrongly equating "foreseeability" with prior perpetrator-specific knowledge in contravention of caselaw. (CMG Cat. 7 Objection 8.) As the California Supreme Court has explained, the factor of foreseeability is not focused on the harm to the particular plaintiff, but on a broader scale to the foreseeability of sexual abuse generally. (*Brown*, 11 Cal.5th at 221, citing *Regents*, 4 Cal.5th at 629; *see also Lawndale*, 72 Cal.App.5th at 131 ["the issue is not whether it was reasonably foreseeable Farr's conduct would injure Doe, but whether it is reasonably foreseeable the failure of school administrators to take reasonable measures to prevent sexual abuse will injure students"].)

17. In *RCALA*, the trial court was reversed for doing exactly what CMG asks this Court to do: conflating the *Rowland* factor of foreseeability with prior notice of sexual abuse by the perpetrator. The plaintiff alleged separate negligence theories of 1) negligent hiring, retention or supervision, and 2) negligent failure to protect based on a special relationship. (70 Cal.App.5th at 668.) The trial court granted summary judgment as to both theories because the plaintiff "failed to raise a triable issue of material fact with respect to whether [the Archdiocese] had actual knowledge, or even reason to know, that [Fr.] Higson committed any sexual abuse/misconduct on [or] before the purported abuse of [Doe] in August 1988." (70 Cal.App.5th at 668.) The plaintiff did not appeal the negligent hiring / supervision claim and did not contend the defendant was on "notice." (*Id.* at 669.)

18. But in reversing the failure to protect claim, the appellate court noted that the "trial court granted summary adjudication on Doe's cause of action for negligence because the court ruled Doe failed to create a triable issue of fact on the first *Rowland* factor, foreseeability. The trial court,

however, applied the wrong standard for foreseeability and did not consider the other *Rowland* factors." (*Id.* at 674.) The appellate court explained:

> Doe presented considerable evidence the Archdiocese was well aware in the late 1980's that numerous priests had been accused of sexually abusing minors in the Archdiocese and around the country. Between 1967 and 1988, the Archdiocese received 49 reports of sexual abuse by clergy in its parishes and parish schools. One of those reports involved another priest assigned to Our Lady of the Rosary, and in 1987 a priest in the Archdiocese pleaded guilty to sexually abusing minors. The Archdiocese's various reports and publications also acknowledged widespread clergy sexual abuse before August 1988, when Higson allegedly molested Doe. … [para] … Based on this evidence, it was reasonably foreseeable that minors attending catechism classes in 1988 might be sexually molested by a priest, *even though the Archdiocese did not have knowledge of prior sexual misconduct by Higson specifically*.

(*Id.* at 676, italics added; *see also Lawndale*, 72 Cal.App.5th at 119 [defendant owed "a duty to protect students from sexual abuse by school employees, even if the school does not have actual knowledge of a particular employee's history of committing, or propensity to commit, such abuse"], italics added.) *RCALA* directly rejects the same analysis CMG advances here which equates foreseeability with prior perpetrator-specific notice.

19. If this Court were to determine, as in *RCALA*, that some claimants could not establish "notice," that would not dispose of the claimant's cause of action based on negligent failure to protect. Instead, as *RCALA* shows, the key inquiry when considering the foreseeability factor is whether it was foreseeable to the Debtor that a priest / agent generally may engage in sexual abuse. *RCALA* illustrates the type of complaints involving other agents and general knowledge of the phenomenon of clergy abuse of children in other dioceses that may suffice to establish this showing. Since this information is largely in possession of the Debtor, extensive discovery would be required if CMG / Debtor brought another objection to this cause of action. (*See Lopez v. Watchtower Bible and Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 590-599.)

**4. Claimants' Fourth Cause of Action Asserting Negligent Failure to Warn Train or Educate is Likewise Special Relationship Based and Requires No Perpetrator-Specific Notice (Cause of Action No. 4).**

20. This cause of action derives from *Juarez v. Boy Scouts of America*. As in *RCALA*, the *Juarez* court's treatment of plaintiff's distinct negligence claims highlights why CMG's objection to Category 7 claims could not support the disallowance of any claim.

21. In *Juarez*, as pertinent to the plaintiff's negligent hiring / supervision claims, the trial court imposed evidentiary sanctions "conclusively establishing" that defendants possessed no evidence of perpetrator-specific actual or constructive knowledge. (*Juarez*, 81 Cal.App.4th at 384.) This finding caused the court of appeal to affirm summary judgment as to the plaintiff's claims alleging negligent hiring / supervision. (*Id.* at 396-397.)

22. But, even so, the court "conclude[d] that a special relationship existed between the Scouts and Juarez giving rise to a duty to protect him from harm caused by the criminal conduct of third parties." (*Id.* at 410.) Thus, if there was no "notice" but the negligent failure to protect claim survived summary judgment, "notice" cannot be an essential element of the claim. The Objections asserting lack of "notice" cannot dispose of claimants' fourth cause of action.

**B. Notice is a Factually Intensive Inquiry and Catholic Mutual Has Not Provided Any Evidence Defeating Notice in Any Case**

23. The causes of action for ratification, IIED, negligent failure to protect, and negligent failure to warn or train do not require prior perpetrator-specific notice, meaning *no* claims can be disallowed solely based on this objection. However, even as to the causes of action that do require some kind of notice, Catholic Mutual overstates the required showing by plaintiffs and understates its factual burden to show that notice was not present. Claimants need only allege that the Diocese knew or should have known that a perpetrator posed a potential risk—*i.e.* that investigation might have disclosed the perpetrator's propensity—*not* that the perpetrator had previously been accused of abuse of which the Diocese was aware. Proving (or refuting) that standard is an intensively factual exercise. In any case, in support of its Objection, Catholic Mutual has provided ***no*** evidence that the

perpetrators identified in the claims they have objected to were not subject to prior accusations, and in fact substantial notice evidence exists as to at least some of those perpetrators.

24. The only two causes of action that Catholic Mutual targets in earnest as failing for lack of notice are negligent supervision and negligent hiring. Each is subject to an *actual or constructive* knowledge standard, meaning there is no requirement that claimants show a previous, public accusation of the perpetrator.

25. On negligent supervision, liability is driven by what the Debtor knew or *should have known* about the risk posed by the employee. (CACI 426; Rest. 2d (Torts) § 12(2) ["The words "should know" … denote the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another"].) For example, in *A.H. v. Tamalpais Union High School District*, the appellate court considered whether a trial court erred in allowing the testimony of six third party victims of sexual abuse by the same abuser because none of those victims had reported the abuse to anyone at the high school when it occurred. ((2024) 105 Cal.App.5th 340, 355-356.) The court recognized:

> "The negligence standard articulated by *C.A.* [*v. William S. Hart Union H.S. Dist.* 53 Cal.4th 861 (2012)] for hiring, supervising, or retaining [a dangerous] employee ... thus imposes liability on a school district on the basis of supervisory personnel's constructive knowledge that an employee is prone to harm students. Constructive knowledge is knowledge that 'may be shown by circumstantial evidence "which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts."

(*Id.* at 356.) The testimony of other victims – even when not relayed to District employees – "all suggest [the abuser's] misconduct was pervasive or, at the very least, well-known among male students. As A.H. argues, this evidence was relevant to show what District supervisory employees should have known about" the abuser. (*Ibid.*) The pervasiveness of abuse may alone support liability under a *should know* standard.

26. Similarly, "[a]n employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit *or fails to use reasonable care to discover the employee's unfitness before hiring him."* (*Juarez*, 81 Cal.App.4th at 377, 395, italic

emphasis added.) "If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business at hand.... If ... the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation." (*Evan F.*, 8 Cal.App.4th at 843 quoting Rest. (2d) of Agency § 213 at com. d.)

27. In *Evan F.*, a pastor was hired as a youth director without investigation. (*Id.* at 843.) The decision to hire was based entirely on the church's knowledge that he was a pastor, worked as a school counselor, and on the recommendation of several church members. (*Id.*) Five years later he was hired to fill an open pastor position. The church was aware that he no longer worked as a school counselor, and that there was some difficulty regarding his reappointment to active ministry. (*Id.*) The church "did not investigate or make any inquiry regarding [perpetrator's] fitness to serve as pastor." (*Id.*) The local church had no knowledge about the perpetrator's unfitness (*id.*), but had an inquiry been made it may have discovered an earlier molestation complaint, and a criminal investigation regarding a schoolboy that resulted in his termination as a counselor. (*Id.* at 832.) Although the local church did not know these facts, had they carried out a reasonable investigation, they may have found them. These facts created a triable question regarding negligent hiring.

28. Catholic Mutual relies upon the declaration of Rodney W. Oligmueller, which states: "[t]hese claimants allege abuse by a perpetrator accused for the first time (as to whom no prior notice of abusive conduct existed)." This is not the same as showing the Diocese did not know nor should it have known that a perpetrator posed a risk. (*See Ericsson v. Nunnink* (2011) 191 Cal.App.4th 826, 850 ["[t]he distinction between 'no one complained to her' and 'I did not know nor should I have reasonably known' is significant. The Erikssons could very well admit that no one complained to Nunnink about the fitness of the horse, yet Nunnink, based on her own expertise, could still have known or had reason to know that the horse was unfit"].) Thus, Catholic Mutual has not actually pointed to any a failure to allege notice, but rather constructed an artificially elevated standard with no basis in California case law.

29. In any case, Catholic Mutual provides no actual evidence to support its claim that these perpetrators were not previously accused, nor any insight into how it has determined which perpetrators were "accused for the first time."[7] A number of the perpetrators it identified in fact had a history of abuse that the Diocese either knew about or should have known about, for example:

- The Claimant in Claim Number 20123, which is subject to this objection, alleged that Fr. Alexander Pinter was asked to leave the Diocese of Toledo over abuse allegations before taking up residence in San Diego and abusing the Claimant. (Ex. 2, John Roe 54 Complaint at ¶¶ 6-10.) The Claimant further alleged that the Diocese failed to exercise reasonable care in hiring Fr. Pinter. (*Id.* at ¶ 27.)
- The Claimant in Claim Number 20061, which is subject to this objection, alleged that Fr. Ernest Paone was employed by another diocese and was known to that diocese to have molested children there before that diocese interceded with Debtor to allow Fr. Paone to work in this Diocese, where he molested Claimant. (Ex. 3, John LS Roe SD Complaint at ¶¶ 6-6.2.) The claimant further alleged that the Diocese failed to exercise reasonable care in hiring Fr. Paone. (*Id.* at ¶ 27.)
- The Claimant in Claim Number 20076, which is subject to this objection, alleged that as a student at a parish school, he was repeatedly molested by a school secretary. Although the Debtor was aware that the police had caught the secretary abusing him, she remained employed at the school and the abuse continued. (Ex. 4, John JD2 Roe SD Complaint at ¶ 6.39.)
- The Claimant in Claim Number 20059, which is subject to this objection, alleged that she was sexually abused by her basketball coach at a Diocesan High School. Claimant directly alleged that an assistant coach "suspected the two were engaged in a sexual relationship." (Ex. 5, VL Complaint at ¶ 12.5.)

---

[7] In addition, the declaration lacks the necessary foundation to establish that the declarant, a principal of the Diocese's insurer, would have the necessary personal knowledge from which to testify about all prior accusations the Diocese and any of its many agents ever received about the perpetrators named in the Objections.

30. These examples show that Catholic Mutual's *ipso facto* statement that the claims it has identified "allege abuse by a perpetrator accused for the first time" should carry little or no evidentiary weight. Moreover, they demonstrate that notice, properly construed, is a factual issue that must be tested through discovery, summary judgment (if appropriate), and ultimately, a jury trial. As these examples show, in addition to discovery to Catholic Mutual and the Diocese, the notice issue may require subpoenas to other dioceses and/or law enforcement, depositions of alleged perpetrators, or personnel from other dioceses. What may be required varies heavily by the circumstances.

**<u>Additional Objections and Arguments</u>**

31. In addition to the above arguments, the undersigned claimants adopt and incorporate the arguments made in the reply brief filed by certain claimants represented by Jeff Anderson & Associates, PA (the "**Anderson Reply**") and the Committee's reply brief in support of the Motion, each as though set forth herein, and respectfully state as follows.

32. Claimants Nos. 20059; 20076; 20089; 20091; 20094; 20123; 20124; 20130; 20131; 20132; 20138; 20140; 20659; 20669; 20670; 20730; 20734; 20736; 20737; 20762; and 20775 also assert claims against parishes, schools, and/or other entities affiliated with the Debtor. Claimant Nos. 20760; 20731; 20728; 20133; 20729; 20122 are still timely to commence such actions based on delayed discovery. The Debtor has stated that any consensual chapter 11 plan in this bankruptcy case would include releases of those affiliates. Thus, if the undersigned claimants' claims *against the Diocese* were disallowed, the "denominator" of claims to be settled as part of the bankruptcy would not significantly change. In addition, the claimants believe that the state law issues underpinning the objections strongly favor their positions, and they will thus likely appeal any rulings based on state law that result in the disallowance of claims. Because consensually resolving the bankruptcy would require settling claims that are on appeal, disallowing claims on these bases would not substantially reduce the settlement "denominator" in the near term for this additional reason.

33. As to the Diocese, these claims involve complex factual issues that cannot be resolved on the pleadings without discovery and expert practice. The claims and arguments described below do not encompass all issues raised by the claim objections or all arguments the undersigned claimants would assert in response to the objections if the Motion were denied. Rather, they are examples of the factual disputes the claim objections raise and the litigation and discovery that they would entail.

34. ***Statute of limitations objections.*** Undersigned counsel represents eleven claimants whose claims have been objected to because they allegedly did not file suit against the Debtor in the time provided by law. If the Motion is denied, the claimants intend to oppose all eleven of these objections. Of the eleven claims subject to a statute-of-limitations objection, four claimants filed lawsuits naming the Diocese on or before June 27, 2023; such actions are timely pursuant to Emergency Rule 9 promulgated by the Judicial Council of California. *See Roe v. Doe 1*, 98 Cal. App. 5th 965, 973 (2023). As to the remaining even claims, the claims are timely under California's "delayed discovery" doctrine because the claimants discovered that their psychological injury or illness was caused by sexual assault within five years of the bankruptcy petition date. The standard for delayed discovery under California law is laid out in greater detail in the Anderson Reply. Contrary to assertions made in the claim objections, the claimants whose claims are subject to this objection have ***not*** waived this argument or made any conflicting statements in their survivor supplements or elsewhere. Neither the proof of claim form nor the supplement asked claimants to identify whether they intended to rely on the delayed-discovery doctrine or to set out all facts supporting the application of the doctrine to their claims. To the extent these claimants have stated that they have long suffered the effects of the abuse or sought treatment, that does not mean, under California law, that they understood that these effects *were caused* by the abuse, which is the necessary factual link under California law for triggering delayed discovery pursuant to California Code of Civil Procedure Section 340.1 (a). These claimants intend to put on expert evidence and produce other facts that support delayed discovery in the event abstention is denied.

35. ***Claim does not adequately identify a perpetrator.*** Undersigned counsel represents five claimants whose claims have been objected to on the basis that they have not adequately identified a perpetrator. As further laid out in the Anderson Reply,[8] the claimants were not required to identify perpetrators by name in their complaints or their proofs of claim, as California law does not require an abuse victim to identify the perpetrator by name. In each case, the claims allege abuse while the claimants were children, and the claimants therefore do not recall the precise names of the perpetrators. Rather, the Diocese or other defendants possess all relevant documents and information about the identity of perpetrators. Even if it were appropriate, in theory, to dismiss claims based on a failure to allege the full name of the perpetrator, it would be unfair to do so here because the defendants possess all the relevant information, and claimants must be allowed to conduct discovery on this issue. If the Motion is denied and the claim objections go forward, undersigned counsel intends to pursue discovery like the discovery described in the Anderson Reply with respect to this category of claim objections.

## Conclusion

36. Catholic Mutual's objections to Category 7 claim does not provide a simple or straightforward path to dismiss any claims. Only two of the seven claims alleged by each claimant require perpetrator-specific notice, meaning that these objections do not provide a basis to disallow any claims. Even to the extent that notice of a particular perpetrator's proclivity to commit abuse is required, the standard is actual or constructive notice, and not, as Catholic Mutual states, a prior public accusation of abuse. As to that standard, Catholic Mutual provides no evidence or argument, and the only purported "evidence" it supplies lacks foundation and is not a sufficient factual basis on which to grant any objections. These objections would engender prolonged discovery, energetic motion practice, and potential appeals, all without the possibility of disallowing any claims in their entirety and thus, with no prospect of changing the "denominator" of claims or moving a settlement forward in the least.

[8] The undersigned claimants adopt and incorporate all arguments set forth in the Anderson Reply.

DATED: January 20, 2026

Respectfully submitted,
**THE ZALKIN LAW FIRM, LLP**

By: */s/ Hunter Haddock*

*Irwin M. Zalkin, SBN 89957*
*Devin M. Storey, SBN 234271*
*Alexander S. Zalkin, SBN 280813*
*Hunter Haddock, SBN 355050*
***The Zalkin Law Firm, LLP***
*10590 West Ocean Air Drive, Suite 175*
*San Diego CA 92130*
*Tel: 858-259-3011*
*Fax: 858-259-3015*
*Email: irwin@zalkin.com*
*dms@zalkin.com*
*alex@zalkin.com*
*hunter@zalkin.com*

*Counsel to Claimants No. # 20059, 20061, 20064, 20076, 20089, 20091, 20094, 20122, 20123, 20124, 20130, 20131, 20132, 20133, 20729, 20138, 20140, 20141, 20659, 20669, 20670, 20726, 20728, 20729, 20133, 20730, 20731, 20734, 20736, 20737, 20760, 20762, and 20775*

## INDEX OF EXHIBITS

| | |
|---|---|
| 1 | JCCP 5105 CMO at Ex. A, Master Complaint |
| 2 | John Roe 54 Complaint at ¶¶ 6-10 |
| 3 | John LS Roe SD Complaint at ¶¶ 6-6.2 |
| 4 | John JD2 Roe SD Complaint at ¶ 6.39 |
| 5 | VL Complaint at ¶ 12.5 |