# Exhibit B

JEFF ANDERSON & ASSOCIATES
Michael Reck, SBN 209895
Michael Finnegan, SBN 241091
Stacey Benson, pro hac vice
12011 San Vicente Blvd, Ste 700
Los Angeles, CA 90049
T: 310-357-2425
mreck@andersonadvocates.com
mike@andersonadvocates.com
stacey@andersonadvocates.com

*Counsel to Claimants No. 20018, 20019, 20021, 20028, 20031, 20033, 20036, 20037, 20038, 20039, 20040, 20232, 20243, 20246, 20248, 20250, 20253, 20266, 20268, 20269, 20270, 20271, 20294, 20295, 20297, 20300, 20579, 20583, 20588, 20594, 20596, 20597, 20599, 20600, 20601, 20602, and 20722*

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SAN DIEGO, a California Corporation Sole,<br><br>Debtor. | Case No. 24-02202-11<br><br>Chapter 11<br><br>**REPLY OF CERTAIN ABUSE CLAIMANTS REPRESENTED BY JEFF ANDERSON & ASSOCIATES IN SUPPORT OF THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND CERTAIN CLAIMANTS FOR ABSTENTION FROM OR A STAY OF CLAIM OBJECTIONS**<br><br>Re: Dkt. 1355, 1435, 1439<br><br>Date: February 11, 2026<br>Time: 10:30 a.m.<br>Judge: Hon. Christopher B. Latham<br>Dept.: 1 |

## TABLE OF CONTENTS

**Title** **PAGE(S)**

I. Claim Objections Would Not Advance a Resolution of this Case....1

II. The Statute of Limitations Objections Cannot Be Resolved on the Pleadings....3

a. Delayed Discovery Depends on Understanding the Nexus Between Abuse and Injury, Not Being Aware of Abuse or Suffering From It....3

b. Catholic Mutual and the Debtor's Objections Present No Evidence on the "Nexus" Element, and the Survivor Supplement Did Not Ask For Any....6

c. Emergency Rule 9 Extended the Revival Period by 178 Days....7

d. Even if a Claimant's Action Was Otherwise Untimely, Multiple Exceptions May Apply to Toll or Estop the Running of the Statute of Limitations....8

III. The Survivor Supplement and California Law Do Not Require an Abuse Claimant to Identify the Perpetrator By Name....9

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Doe v. Bakersfield City School District*, 136 Cal.App 4th 556, 568 (2009)……………………………….8

*Doe v. Doe 1*, 208 Cal. App. 4th 1185, 1187 (2012)………………………………………..…………..8

*Hightower v. Roman Catholic Bishop of Sacramento* 142 Cal.App. 4th 259 (2006)…………………4-5

*In Re Holm*, 931 F. 2d 620, 623 (9th Cir. 1991)……………………………………..………………9

*In Re The Roman Catholic Diocese of Rockville Centre, N.Y.* 651 B.R. 146, 153(2023)………..……10

*John R. v. Oakland Unified School District* 48 Cal.3d 438, 446 (1989)…………………...…………8

*K.J. v. Arcadia Unified School District* 172 Cal. App. 4th 1229, 1235 (2009)………………………..5,6

*Lent v. Doe* 40 Cal. App 4th 1177, 1180 (1995)……………………………………………………5,6

*Parkhurst v. Doe 1 Corporation*, 2024 WL 655993 (2024)……………………………………………11

*Rubenstein v. Doe* 3 Cal. App. 5th 903, 906 (2017)…………………………………...……………5,6

*Sellery v. Cressey* 48 Cal. App. 4th 528, 541-42 (1996)………………………………………………..6

*Roe v. Doe 1,* 98 Cal. App. 5th 965,973 (2023)…………………………………….…………..7-8

*Wallace v. Der-Ohanian* 199 Cal. App. 2d 141, 143 (1962)……………………………………11-12

**STATUTES** **PAGE(S)**

Cal. Code Civ. Proc. § 340.1……………………………………..………………………..3,4,8

Cal. Code Civ. Proc. § 340.1(q)……………………………………..…………………….……..7

Federal Rules of Bankruptcy P. 3001(f)……………………………………………..………..9

United States Constitution, 11 U.S.C. § 157(b)………………………………………………1

United States Constitution, 28 U.S.C. § 1411…………………………………………………....1

United States Constitution, 50 U.S.C. § 526…………………………………………….........8

**OTHER AUTHORITIES**

Southern California Clergy Cases JCCP 5101 Court Order dated July 8, 2024……………………..8

Certain Sexual Abuse Claimants represented by Jeff Anderson & Associates, ("Abuse Claimants") by and through their undersigned counsel hereby submit the following in support of the Motion of the Official Committee of Unsecured Creditors and Certain Claimants' Motion for Abstention From Stay of Claim Objections ("Abstention Motion") [Dkt. 1355] and in response to the Oppositions filed by the Debtor [Dkt. 1435] and Catholic Mutual [Dkt. 1439].[1] The Abuse Claimants understand that The Official Committee of Unsecured Creditors ("Committee") and the Zalkin Law Firm are replying to the Oppositions filed by the Debtor and Catholic Mutual and hereby joins in such responses ("Committee Reply" and "Zalkin Reply") and incorporates them herein by reference for all purposes as though set forth fully herein. The Abuse Claimants reserve the right to withdraw the reference.

## Jurisdiction and Reservation of Rights

1. Pursuant to 11 U.S.C. § 157(b), the Abuse Claimants do not consent to entry of final judgment or final order by the Bankruptcy Court with respect to any objections to their claims and, further, hereby assert and reserve all rights to a trial by jury under the Seventh Amendment of the United States Constitution, 28 U.S.C. § 1411, and all other applicable law.

## Reply

### I. Claim Objections Would Not Advance a Resolution of this Case

2. This Court should grant the Motion of The Official Committee of Unsecured Creditors and Certain Claimants for Abstention From or a Stay of Claim Objections ("Abstention Motion"). Alternatively, the Court should allow sufficient time for the Abuse Claimants to conduct discovery, as it pertains to the claim objections, should this Court determine that federal bankruptcy court is the appropriate venue to litigate these issues.

3. By filing over 160 claim objections, the Diocese and Catholic Mutual are attempting to deny one third of the child sexual abuse survivors abused in the Diocese the long-awaited justice and resolution they deserve. The Diocese and Catholic Mutual advocate for costly and distracting

[1] To fully preserve the rights of all claimants, the claim numbers reflected in the signature block include all duplicate and amended claim numbers by which claimants subject to objections may be identified.

litigation of claims and now ask this court to decide issues of California state law that have already been decided. This is a classic example of forum shopping and will result in an enormous expenditure of the Diocese's resources if the claim objections are allowed to proceed.

4. The Diocese and Catholic Mutual are asking this Court to wade into numerous factual issues and seek to distract and derail the mediation process and eliminate the rights of child sexual abuse survivors. The Abuse Claimants have been unable to conduct discovery on the Diocese due to the automatic stay and have conducted little to no discovery on third party non-debtor defendants. If abstention is denied, the Abuse Claimants intend to file motions to lift the automatic stay to allow their cases to return to state court so that the Abuse Claimants can obtain final resolution of all issues impacting their claims, and not just those selected by the Diocese and its insurer.

5. As laid out in the Abstention Motion, the issue before the Court is whether this Court should decide the merits of a sexual abuse survivor's personal injury lawsuit and liquidate their claims. The short answer is "No." All of the claim objections brought by the Diocese and Catholic Mutual raise highly factual questions that should be addressed either in a plan of reorganization, post-confirmation, or in California state court where there are mechanisms and procedures in place to proceed with discovery and motion practice in an effective and efficient manner. The arguments and declarations set forth by the Diocese and Catholic Mutual cannot resolve these issues as a matter of law.

6. Even if the objections could be decided on legal grounds, they would not finally dispose of the claims because the Abuse Claimants have also alleged claims against parishes, schools, and other non-debtor defendants, which the Debtor has repeatedly stated must be channeled by any chapter 11 plan proposed in this case. Thus, deciding the claim objections would be a wasteful and fruitless exercise because the surviving claims against the non-debtor defendants would still need to be settled as part of this bankruptcy. In addition, disallowing claims on purely legal grounds would not promote settlement because the claimants would likely seek leave to amend, which is subject to a liberal standard, or pursue appeals. The Court should therefore abstain from hearing the objections and/or stay the objections pending the effective date of a chapter 11 plan.

## II. The Statute of Limitations Objections Cannot Be Resolved on the Pleadings[2]

7. The Diocese and Catholic Mutual each argue that claimants who had not filed suit as of the petition date are now time-barred because the A.B. 218 window has closed, so any claims they might have brought are now untimely. But the objections do not grapple with the California provision that tolls child sex abuse claims until after the plaintiff discovers (or should have discovered) the causal connection between their injuries and the abuse. Instead, they appear to simply argue that because the Abuse Claimants alleged that they have long felt the effects of the abuse, they cannot alleged delayed discovery. That argument ignores published California case law holding that Abuse Claimants who suffered for many years can still successfully allege delayed discovery, and the key inquiry is not how long an Abuse Claimant suffered but when they became aware of the nexus between their suffering and the abuse. *That* question is a fact-intensive one that cannot be resolved on the pleadings. Moreover, the idea that *none* of these Abuse Claimants can show that they experienced delayed discovery is implausible.

### A. Delayed Discovery Depends on Understanding the Nexus Between Abuse and Injury, Not Being Aware of Abuse or Suffering From It

8. Each Abuse Claimant who first filed a lawsuit or proof of claim after December 31, 2022 (or has not yet filed a lawsuit) may be able to present a timely claim by invoking the delayed discovery provision codified in Section 340.1(a), which, as amended by A.B. 218, provides:

> (a) In an action for recovery of damages suffered as a result of childhood sexual assault, *the time for commencement of the action shall be* within 22 years of the date the plaintiff attains the age of majority or *within five years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual assault*, whichever period expires later.

A.B. 218, Stats. 2019, c. 861, § 1, eff. Jan. 1, 2020 (emphasis added). The plain language of the statute encompasses three elements to commence the running of the statute of limitations:

1. Childhood sexual assault; and
2. Psychological injury or illness occurring during adulthood; and
3. Actual or constructive knowledge of the causal relationship between the childhood sexual assault and the adulthood psychological injury or illness (“causal connection” or “nexus”).

---

[2] This Reply focuses on the “statute of limitations/time-barred” and “unnamed perpetrator” categories of claim objections because these categories are not addressed in detail in any other party’s reply brief. The Abuse Claimants reserve all rights and arguments to oppose their individual claim objections should this Court deny the Abstention Motion.

Section 340.1's clear language shows the causal connection element may be established in either of two ways: (1) the Abuse Claimant *actually discovered* the causal connection, or; (2) the Abuse Claimant did not actually discover the connection, but the Abuse Claimant *reasonably should have discovered* the nexus. *Id.*

9. Whether an Abuse Claimant "discovered" the connection depends on an actual knowledge standard requiring an admission. The admission can appear in therapy records, court records, deposition testimony of the Abuse Claimant, non-hearsay admissions made by the plaintiff to third parties, admissions in formal discovery, or in police records/interviews. Without an admission, the Diocese cannot establish that the Abuse Claimant actually discovered the nexus.

10. The one delayed-discovery opinion the Diocese cites, *see, e.g.*, Dkt. 1132-1 ¶ 19, involves the rare case where such an admission was found. In *Hightower v. Roman Catholic Bishop of Sacramento* 142 Cal. App. 4th 759 (2006), the court determined the delayed discovery rule was not retroactive and therefore not available to the plaintiff, but in dicta the court also determined the record did not support delayed discovery. *Id.* at 767–68. The court zeroed in *on an admission* in the appellate record the plaintiff had made in a transcript from a 1982 sentencing hearing:

> That transcript shows his lawyer asking the court to consider as a mitigating factor that Hightower had suffered from depression for a long time and that he was predisposed to commit sex abuse on children *because* he had been abused as a child. In short, Hightower knew as of 1982 that he was suffering some psychological injuries from the sexual abuse he suffered.

*Id.* at 768 (emphasis added). "Because" was the key word. The record showed the plaintiff understood the causal link between his abuse and his own sexual deviancy.

11. Absent an admission, the Diocese and Catholic Mutual must establish that an Abuse Claimant "reasonably should have known" of the causal connection, which is far more complicated and requires a detailed evidentiary presentation. What other traumas did the particular Abuse Claimant experience that could have reasonably obscured the Abuse Claimant's recognition of the nexus between the abuse and the adulthood injuries? Did the Abuse Claimant have an organic mental health condition unrelated to any trauma that prevented the claimant from making a connection? Did the Abuse Claimant's close family members suffer from similar

emotional or psychological struggles that could reasonably have caused the claimant to believe that he/she was suffering from a non-trauma-related condition? Was the Abuse Claimant correctly or incorrectly diagnosed with a non-trauma-related condition that could account for some of all of his/her psychological struggles and reasonably prevent the claimant from understanding the causal connection? These considerations and many more weigh on the reasonableness of an Abuse Claimant's failure to discover the causal connection. Delayed discovery is not the surface level, a one-size-fits-all, consideration the objections present.

12. The three published California cases on delayed discovery (other than *Hightower*) establish that when a plaintiff should have discovered the causal connection between the abuse and the injury is a contextual question that cannot be answered on the pleadings.

13. In *Lent v. Doe*, the plaintiff was sexually abused as a minor beginning in approximately 1974. 40 Cal. App. 4th 1177, 1180 (1995). The plaintiff developed "feelings of 'deep shame, self-blame and self-loathing.'" *Id.* at 1181. Even though the plaintiff knew he had been abused and had not repressed his memories, he alleged that "psychological mechanisms of denial and dissociation . . . naturally and reasonably prevented plaintiff from being able to discover that psychological injuries occurring in his adult life were causally related to the sexual abuse" until he entered counseling in 1991. *Id.* at 1181–82. The Court of Appeal held that "[f]or purposes of withstanding demurrer, such allegations are sufficient." The fact that the plaintiff had long suffered from abuse did not preclude delayed discovery. *Id.* at 1186.

14. In *K.J. v. Arcadia Unified School District*, the plaintiff was abused by her high school teacher until she graduated in July 2006. 172 Cal. App. 4th 1229, 1235 (2009), *disapproved on other grounds*, *Rubenstein v. Doe* 3 Cal. 5th 903, 906 n. 3 (2017). The plaintiff then told her mother and received counseling. *Id.* The perpetrator was arrested in October 2006. *Id.* Despite knowing of the abuse, informing her mother, seeing the abuser convicted and sentenced, and undergoing nearly one year of therapy, the plaintiff did not discover the connection with her symptoms until July 2007, just before commencing her action. *Id.* at 1235–1236, 1234. The Court of Appeal held that "for pleading purposes" "[t]hese allegations are sufficient to invoke the delayed discovery rule." *Id.* at 1234

15. In *Sellery v. Cressey*, the 37-year-old plaintiff always knew she was abused as a child but did not discover the full extent of the abuse until entering therapy in 1991 to address her depression, dissociation and sexual dysfunction. 48 Cal. App. 4th 538, 541–42 (1996). Just as the Diocese does here, the defendants claimed the statute of limitations began running several years earlier in 1984 when "the psychological problems for which [the plaintiff] ultimately sought treatment started surfacing." *Id.* at 547. The plaintiff introduced the testimony of two psychological experts who found that she had used "various defense mechanisms, such as dissociation, rationalization and an extreme process of self-blaming and self-shaming as a defense against having full and conscious awareness of the ways in which such abuse had damaged her as an adult" and opined that these mechanisms prevented her from connecting the abuse to her injuries until she began therapy. *Id.* at 547–48. The court agreed with the plaintiff and reversed the grant of summary judgment. *Id.* at 548.

16. These cases are clear that being abused and also suffering from psychological problems at some point is not enough to commence the running of the statute of limitations. *Lent*, *Sellery*, and *K.J.*, each recognized the difficulty survivors face in forming the causal connection by holding that the respective plaintiffs did not make the requisite discovery of the causal link on their own, but rather with professional help through counseling.

**B. Catholic Mutual and the Debtor's Objections Present No Evidence on the "Nexus" Element, and the Survivor Supplement Did Not Ask For Any**

17. Here, the Diocese reasons that where an Abuse Claimant "knew of the abuse" or "felt the effect of the alleged abuse for a long time," "delayed discovery does not apply." *See, e.g.*, 1071-1 ¶ 18, Dkt. 1132-1 ¶ 19. The Diocese's boilerplate objections fail to address the critical element for delayed discovery: causal connection. Merely knowing about the abuse or suffering for a long time does not defeat delayed discovery under the binding California case law described above. Similarly, Catholic Mutual has made no particularized showing that delayed discovery is unavailable to *any* Abuse Claimant, and neither Catholic Mutual's memorandum in support of this objection, nor the Declaration of Rodney W. Oligmueller even mentions delayed discovery.

18. In effect, Catholic Mutual and the Diocese assume—with no analysis—that *every claim that would need to rely upon delayed discovery is ineligible to do so*, which is improbable for several reasons. First, the Legislature enacted the delayed discovery provision with the clear understanding that some plaintiffs could satisfy its requirements. Second, the Legislature declined to put an upper cap on a Abuse Claimant's ability to invoke the rule, meaning the Legislature recognized a sexual abuse victim of any age could realistically meet the criteria. Third, three of the four cases published cases to consider the delayed discovery provision of Section 340.1 allowed the plaintiff to proceed, a much higher success rate than the 0% figure Catholic Mutual wants this Court to accept.

19. Lastly, Catholic Mutual's criticism that "[t]he proof of claim submissions listed above failed to plausibly show that they were timely (or in many cases positively showed that they were not timely"), Dkt. 981 at 9, rings hollow when, *even the version of the voluntary Survivor Supplement that Catholic Mutual asked this Court to approve did not require any claimant to provide information supporting a delayed discovery claim*. *See* Dkt. 254-1 (Catholic Mutual proposed survivor supplement). If a Abuse Claimant was not asked to provide information about delayed discovery, how can the absence of such information invalidate a claim?

### C. Emergency Rule 9 Extended the Revival Period by 178 Days

20. Catholic Mutual's objection attacks the applicability of California's Emergency Rule 9 to toll the three-year revival limitations period of Section 340.1. Dkt. 981 at 5–6. Effective January 1, 2020, that section opened a three-year period for the filing for civil actions resulting from childhood sexual assault. Cal. Code Civ. Proc. § 340.1(q). On May 28, 2020, the Judicial Council adopted an amended version Emergency Rule 9, tolling "the statutes of limitations and repose for civil causes of action that exceed 180 days . . . from April 6, 2020, until October 1, 2020." Emergency Rule 9(a).

21. Catholic Mutual's premise – that Emergency Rule 9 does not extend Section 340.1's three-year revival window – has been expressly rejected by a published California appellate decision directly on point. *Roe v. Doe 98*, Cal. App. 5th 965, 973(2023) (Emergency Rule 9, which tolled statutes of limitations for civil causes of action that exceed 180 days, tolled

section 340.1, subdivision (q)'s three-year lookback window for 178 days. Plaintiff's claims thus did not expire until June 27, 2023.", (emphasis added)), as well as by a decision of the Coordination Trial Judge presiding over the Southern California Clergy Cases, JCCP 5101.[3]

22. While the analytical underpinning of Catholic Mutual's objection to this category is substantively baseless, for purposes of this abstention motion, the bigger problem is that even if this Court could, and did, set aside the precedential holding in *Roe v. Doe 98* and determine that Emergency Rule 9 was inapplicable to claims filed between January 1 and June 27, 2023, *this alone would not result in any claims being disallowed* because those Abuse Claimants could invoke delayed discovery, which would need to be negated to disallow the claim.

**D. Even if a Claimant's Action Was Otherwise Untimely, Multiple Exceptions May Apply to Toll or Estop the Running of the Statute of Limitations**

23. At least three additional fact specific bases may exist to extend the statute of limitations, notwithstanding the provisions of Section 340.1. California Insurance Code Section 11583 has been interpreted to toll Section 340.1 if a Diocese has paid for a survivor's therapy but failed to advise the survivor of the statute of limitations. *Doe v. Doe 1*, 208 Cal.App.4th 1185, 1187 (2012). Under the Servicemembers' Civil Relief Act, the statute of limitations cannot run against a survivor during the periods of time that the servicemember is on active duty. 50 U.S.C. App. § 526. Equitable estoppel may also apply in childhood sexual abuse cases to allow otherwise time-barred actions to move forward. *Doe v. Bakersfield City Sch. Dist.*, 136 Cal.App.4th 556, 568 (2009) (quoting *John R. v. Oakland Unified Sch. Dist.* 48 Cal.3d 438, 446 (1989)) ("[F]or purposes of applying equitable estoppel, the time for filing a claim against the district was tolled during the period that the teacher's threats prevented plaintiffs from pursuing their claims.") Neither the Diocese nor Catholic Mutual address any of these inherent factual issues in their objections.

[3] The Abuse Claimants request that the Court take judicial notice of the court Order dated July 8, 2024, in the Southern California Clergy Cases, JCCP 5101. This Order is judicially noticeable under Federal Rule of Evidence 201 because they are court filings that are relevant to this case for the reasons explained herein. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *see also Fowler Packing Co. v. Lanier*, 844 F.3d 809, 813 n.2 (9th Cir. 2016) (taking judicial notice of filing of complaint in district court).

## III. The Survivor Supplement and California Law Do Not Require an Abuse Claimant to Identify the Perpetrator By Name

24. In asserting a claim in bankruptcy, a claimant is only required to fill out and sign a proof-of-claim form adopted by the Bankruptcy Court. Fed. R. Bankr. P. 3001(f). The claim is then "*strong enough to carry over a mere formal objection without more*," requiring the objector "to produce evidence and show facts tending to defeat the claim." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) (citation omitted). The Abuse Claimants satisfied this standard. On November 14, 2024, this Court entered the Bar Date Order approving the proof of claim form to be used by Abuse Claimant asserting Survivor Claims, including the Survivor Supplement agreed to by the Debtor and specifically geared toward Survivor Claims. Dkt. No. 292. By completing the Survivor Supplements, Abuse Claimants provided the Debtor with all the information it asked for and established prima facie claims.

25. It would be extremely unfair for the debtor to agree to a specialized Supplement, approved by the Court, that provided far more factual details than a Form 410 and then turn around and say the proof of claim is missing answers to questions the form never asked or the answers provided do not satisfy the debtor. Instead, once the Abuse Claimants answered the questions the Diocese asked, it became the Diocese's burden (and Catholic Mutual's) to come forward with evidence—not mere legal arguments and allegations—defeating the claims.

26. One basis of the Debtor and Catholic Mutual's claim objections is the failure of an Abuse Claimant to identify the perpetrator. But the Supplement does <u>not</u> require a survivor to identify the perpetrator by name.[4] In Part 5: Nature of Complaint (b) the question states:

> "Who committed the acts of abuse or other wrongful conduct? Please identify each abuser by complete name(s) *or other description to the best of your recollection.* Please identify the title, position, or role of each abuser to the best of your recollection and the abuser's relationship to the Diocese of San Diego. *If you do not know the name(s) of each abuser, please identify them by title, position or other description (for example, approximate age, height, weight, hair color, clothing worn, identifying marks, etc.).*"

[4] Dkt. 292 at 25.

(Emphasis added.)

27. Even if an Abuse Claimant did exactly what the confidential supplement asked him or her to do, the Diocese and Catholic Mutual are still objecting to the claim. For example, Claim No. 20250[5] identified the abuser in the Proof of Claim and Supplement as "a priest at St. Didacus parish school in San Diego, CA." The abuse occurred from approximately 1984 to 1985 in the rectory at St. Didacus. *Id*. The Diocese is in possession of the records containing the names of individuals, including priests, deacons, seminarians, etc., who worked at St. Didacus in San Diego, and despite doing exactly what the claim form asked the Abuse Claimant to do, the Diocese and Catholic Mutual now advocate for a "gotcha situation" which is unfair to survivors of child sexual abuse who were abused by priests and employees of the Diocese who the Diocese allowed to access children. This is especially unfair given that the reason some Abuse Claimants could not identify their abusers is because they were children when the abuse took place.

28. Furthermore, the Diocese and Catholic Mutual do not agree on what "failure to identify the perpetrator" means as the Diocese objected to approximately 22 claims on this basis, and Catholic Mutual objected to approximately 34 claims on this basis. One could infer from this discrepancy that the Diocese possesses enough information to identify at least 12 perpetrators by matching the information provided in the Supplements with its files.

29. Given that the Diocese is in possession of the very information it is faulting the Abuse Claimants for not providing, the Abuse Claimants have a right to conduct discovery on the Diocese to determine the identity of their abusers. The Diocese is in possession of the records of its employees and who worked at each parish, school and entity affiliated with the Diocese. This information can only be obtained through the discovery process. Even when dismissing claims for failure to meet federal pleading standards, Judge Glenn in the Rockville Centre diocese bankruptcy noted that, because the proof of claim form did not request information sufficient to meet the pleading standard, discovery was appropriate. *See In re The Roman Catholic Diocese of Rockville Centre, N.Y.*, 651 B.R. 146, 153 (Bankr. S.D.N.Y. 2023).

---

[5] Dkt. 1013; Dkt. 1026; Dkt. 1089.

30. Furthermore, California law does not require a survivor of child sexual abuse to identify his or her abuser to establish a negligence claim against a defendant. The Diocese and Catholic Mutual cite no authority to support the position that a defendant cannot be liable if the name of the perpetrator is incomplete or unknown to the Plaintiff.

31. The lone case relied upon by the Diocese in the claim objections to argue that "[a] claim that does not identify the perpetrator does not plausibly allege that the defendant should have foreseen the perpetrator's conduct" is misleading at best. *E.g.*, Dkt. 1013 ¶ 16. In *Parkhurst v. Doe 1 Corporation*, 2024 WL 655993, at *7 (C.D. Cal. Jan. 10, 2024), the issue before the federal district court was not that the Plaintiff failed to identify the perpetrator—the perpetrator there was in fact identified by name—but whether the complaint sufficiently pleaded that the defendant, a church entity, had a duty to protect the Plaintiff from abuse by the perpetrator at the home where Plaintiff and the perpetrator both lived. *Id.* at *2. Like the claim objections here, the crux of the *Parkhurst* case is dependent on facts specific to the abuse and the survivor including where the abuse occurred, under what circumstances, and the perpetrator's relationship to the survivor.

32. In this case, many of the claims the Diocese and Catholic Mutual objected to involve partial names or descriptions of perpetrators, and/or a description of the perpetrator's position. Both responses are permissible under the instructions given in the Survivor Supplement, and many of the responses include a description of where the abuse occurred, including on parish property, at parish-sponsored events and/or during other activities that establish the Diocese's duty to the Abuse Claimants, and its control and supervision of the perpetrator.[6]

33. Survivors are not required by law to identify a perpetrator by name to state negligence-related claims arising from their abuse. In *Wallace v. Der-Ohanian,* an 11-year-old camper was sexually abused by an unidentified man who entered an unlocked door of a room occupied by the victim and another child and brought one of the children to another part of the camp where he raped and sexually abused her. 199 Cal. App. 2d 141, 143 (1962). Even though the perpetrator was never identified, the Court of Appeal held that the camp's owner could be held liable

[6] See Claim Nos. 20232, 20600/20037, 20040, 20250, 20266, 20269, 20294, and 20300.

for the abuse because it was reasonably foreseeable that campers left alone with their doors unlocked could suffer abuse under the circumstances, including the presence of itinerant laborers on nearby farms and a part-time camp employee with a criminal record. *Id.* at 148.

34. The sexual abuse of children has been foreseeable by the Diocese and the Catholic Church for decades and here, the possibility of the perpetrators being identified through discovery is far greater than in *Wallace*, as the Abuse Claimants identify the perpetrators by their role and position at a specific parish, during specific years, and many Abuse Claimants provide partial names of the perpetrators. In order to fully investigate and find the true identity of the perpetrators, the Abuse Claimants need to conduct discovery.

35. More broadly, the issue of whether the Diocese had a duty to the Abuse Claimants and control, authority, and/or supervision of the perpetrators, is a highly fact-intensive issue, an issue that is not easily resolved without crucial discovery and should not be resolved without affording the Abuse Claimants the opportunity to conduct that discovery.

36. To this point in the Abuse Claimants' cases, they have not been given the opportunity to conduct any meaningful and critically important discovery due to the Diocese's decision to file bankruptcy. The litigation of these issues should occur in state court where the processes and tools are in place to effectively manage the litigation and discovery related issues that may arise because of these Claim Objections. Should this court undertake the litigation of the Claim Objections, it will stall resolution of this entire bankruptcy case for years to come. For all the reasons set forth herein, the Abuse Claimants respectfully ask this Court to grant the Abstention Motion.

Dated:

JEFF ANDERSON & ASSOCIATES, P.A.

/s/Michael Reck
Michael Reck
Michael G. Finnegan
Stacey J. Benson

mreck@andersonadvocates.com
mike@andersonadvocates.com
stacey@andersonadvocates.com

Attorneys for Claimants No. *20018, 20019, 20021, 20028, 20031, 20033, 20036, 20037, 20038, 20039, 20040, 20232, 20243, 20246, 20248, 20250, 20253, 20266, 20268, 20269, 20270, 20271, 20294, 20295, 20297, 20300, 20579, 20583, 20588, 20594, 20596, 20597, 20599, 20600, 20601, 20602, and 20722*