# EXHIBIT 6

DAVID L. OSIAS (BAR NO. 091287)
DEBRA A. RILEY (BAR NO. 151925)
EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: dosias@allenmatkins.com
driley@allenmatkins.com
tfates@allenmatkins.com

Attorneys for Debtors in Possession
METABOLIFE INTERNATIONAL, INC. and
ALPINE HEALTH PRODUCTS, LLC

FILED
SEP 16 2005
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re

METABOLIFE INTERNATIONAL, INC. and ALPINE HEALTH PRODUCTS, LLC,

Debtors.

Civ. Case No. 05 CV 1802 IEG (RBB)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION UNDER 28 U.S.C. § 157(b)(5) FOR AN ORDER (1) DETERMINING THAT PERSONAL-INJURY TORT AND WRONGFUL-DEATH CLAIMS, WHICH CANNOT BE TRIED IN A BANKRUPTCY COURT, SHALL BE HEARD IN THIS DISTRICT COURT RATHER THAN IN OTHER DISTRICT COURTS SCATTERED AROUND THE COUNTRY AND (2) GRANTING RELATED AND ANCILLARY RELIEF NECESSARY FOR IMPLEMENTING THAT DETERMINATION

Date: October 24, 2005
Time: 10:30 a.m.
Ctrm: 1
Judge: Hon. Irma E. Gonzalez

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ..... 1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ..... 3

A. Metabolife and its Business ..... 3

B. The Ephedra Actions ..... 3

C. The Chapter 11 Cases ..... 5

D. The Preliminary Injunction ..... 5

III. THE RELIEF REQUESTED ..... 6

IV. LEGAL ARGUMENT ..... 7

A. This Court is the Appropriate Venue for Trial of the Ephedra Actions and Claims Under Section 157(b)(5) ..... 7

B. Transfer of the Ephedra Actions to this Court is Appropriate Under Section 157(b)(5) ..... 9

V. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

A.H. Robins Co. v. Piccinin
788 F.2d 994 (4th Cir. 1986) ..... 8, 9

In re Dow Corning Corp.
86 F.3d 482 (6th Cir. 1996) ..... 8, 9

In re Pan Am Corp.
16 F.3d 513 (2d Cir. 1994) ..... 9

In re Twin Laboratories, Inc.
300 B.R. 836 (S.D.N.Y. 2003) ..... 8, 9

In re U.S. Lines Inc.
216 F.3d 228 (2d Cir. 2000) ..... 10

Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach
523 U.S. 26 (1998) ..... 10

Pacor v. Higgins
743 F.2d 984 (3rd Cir. 1984) ..... 8

Shah v. Pan American World Services, Inc.
148 F.3d 84 (2d Cir. 1998) ..... 10

**Statutes**

11 U.S.C. § 1102 ..... 5

11 U.S.C. § 1107(a) ..... 5

11 U.S.C. § 1108 ..... 5

28 U.S.C. § 157 ..... 7

28 U.S.C. § 157(b)(2)(B) ..... 8

28 U.S.C. § 1334 ..... 2, 7

28 U.S.C. § 1334(b) ..... 2, 8

28 U.S.C. § 1407 ..... 10

Metabolife International, Inc., debtor in possession ("Metabolife"), and its wholly owned subsidiary Alpine Health Products, LLC, debtor in possession ("Alpine Health Products," and together with Metabolife, the "Debtors in Possession"), hereby submit this memorandum of points and authorities in support of their petition under 28 U.S.C. § 157(b)(5) for an order (1) determining that personal-injury tort and wrongful-death claims, which cannot be tried in a bankruptcy court, shall be heard in this district court rather than in other district courts scattered around the country, and (2) granting related and ancillary relief necessary for implementing that determination (the "Petition").

## I. PRELIMINARY STATEMENT

The Debtors in Possession filed petitions under chapter 11 of the Bankruptcy Code on June 30, 2005 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of California, the Hon. John J. Hargrove presiding (the "Bankruptcy Court"). As of the Petition Date, approximately 362 ephedra-based personal-injury tort and wrongful-death ("PITWD") actions were pending against Metabolife in state and federal courts, alleging injuries resulting from the purchase and use of Metabolife's products that contained ephedra.[1] (The action against Metabolife or Alpine Health Products is an "Ephedra Action;" the PITWD claims themselves are the ephedra claims.).

As of the Petition Date, approximately 200 Ephedra Actions (the "MDL Actions") had been transferred to the District Court for the Southern District of New York, the Hon. Jed S. Rakoff presiding, for consolidated pretrial management as part of a multi-district litigation (the "MDL Proceeding"). The remaining 162 or so Ephedra Actions are pending in various state and federal courts across the country (the "Non-MDL Actions").

Additionally, plaintiffs in the Ephedra Actions will be filing proofs of claim in one or both of the bankruptcy cases. The parties to the Ephedra Actions are currently negotiating specific procedures for filing ephedra-related proofs of claims and a claims bar date. These matters will be submitted to court for approval.

[1] To the extent that there may be some "trailing" ephedra claims, such as false or deceptive advertising, they too are considered part of the ephedra claims and are included in this request.

The Debtors in Possession request an order that the ephedra claims, which cannot be tried in a bankruptcy court, shall be heard in this district court rather than in other district courts throughout the country. The order should also grant related and ancillary relief necessary for implementing that determination, such as specifically directing that the Ephedra Actions be transferred or otherwise moved to this Court.[2] This Court has jurisdiction to hear this Petition under 28 U.S.C. §§ 1334(b). Having all Ephedra Actions heard by this Court, the district court for the district where the chapter 11 bankruptcies are pending, is appropriate, equitable, and precisely the result contemplated by 28 U.S.C. § 157(b)(5).

A request under section 157(b)(5) such as this one is commonplace in chapter 11 cases that involve a substantial number of PITWD claims, or "mass-tort claims." A chapter 11 case is a collective proceeding, designed to concentrate, manage, and resolve all the debtor's challenges in one location. Only a court of bankruptcy, exercising the extremely broad jurisdictional grant under section 1334 of the Judicial Code, can provide that complete, comprehensive view. In general, the bankruptcy court is the forum for obtaining that complete picture, but as discussed below, Congress has decided that an Article III court, and not an Article I court (the bankruptcy judge) must oversee and try PITWD claims. Bringing all ephedra claims before one (district) court affords the same comprehensive picture, at a different jurisdictional level, as the similar collective process that obtains in a chapter 11 case before the bankruptcy court. This request under section 157(b)(5) is a natural extension of the basic decision to bring all a debtor's problems together in one place.

These considerations apply with even greater force to the PITWD claims in the Metabolife cases. The interested parties — the Debtors in Possession, the retailers, the shareholders, the ephedra plaintiffs and their representatives, the Official Creditors' Committee — have already begun the difficult process of figuring out how to resolve the ephedra claims at a cost that does not overburden the Debtors in Possession and their other creditors and that does not consume the estates through defense expenses. The parties met at the office of counsel for the Debtors in

---

[2] Although the MDL Actions will be moved for trial, it may not be necessary, as discussed below, to actually formally transfer the MDL Actions at this time. As discussed below, for the time being at least, the MDL Actions will stay in New York for pretrial purposes.

Metabolife's product Metabolife 356®. A chart listing all pending Ephedra Actions is attached hereto as Exhibit A. The plaintiffs in these actions contend that Metabolife 356® was defective or unsafe and allege various forms of personal injury or wrongful death resulting from the consumption of the Metabolife product.

The cost of litigating the Ephedra Actions has been staggering. As of the Petition Date, in addition to the $20 million or so paid by Metabolife's insurers, Metabolife had spent an additional $20 million of its own money in legal fees and costs defending the Ephedra Actions. Although Metabolife has been generally successful in avoiding significant adverse judgments, such success has come at great expense.

In April 2004, a multi-district litigation for ephedra-related product liability actions was commenced in the United States District Court for the Southern District of New York, In re Ephedra Products Liability Litigation, Case No. 04 MSD 1598 (JSR). As discussed above, 200 or so Ephedra Actions against Metabolife (the "MDL Actions") have been transferred to the MDL Proceeding for consolidated pretrial management.

The Non-MDL Actions consist of (1) approximately 90 actions currently pending in California state court which have been coordinated by the Judicial Council of California in a single proceeding pending in San Diego Superior Court, JCCP No. 4360, the Hon. Ronald Styn presiding (the "JCCP Actions"), (2) one action pending in federal district court in Alabama, and (3) approximately 72 actions pending in various other state or federal courts.

In addition to naming Metabolife as a defendant, most of the Ephedra Actions name other parties with a connection to Metabolife. These other defendants include one or more retailers, the entities that sold the Metabolife's products (especially Metabolife 356®) to the end users; the companies that manufactured the Metabolife ephedra-containing products for Metabolife; the various distributors of Metabolife's ephedra-containing products, especially from the days when Metabolife was distributed through multi-level marketing rather than directly by Metabolife itself; and finally, one or more of Metabolife's three shareholders — Michael L. Blevins, William R. Bradley, and Michael J. Ellis (collectively, the "Third Parties").

C. The Chapter 11 Cases

As noted above, on June 30, 2005, each of the Debtors in Possession commenced a bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3] On July 1, 2005, Christopher R. Barclay was designated the Responsible Natural Person for the Debtors in Possession, which continue to operate their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors (the "Committee") has been appointed under 11 U.S.C. § 1102. The Committee is made up of certain plaintiffs[4] in the Ephedra Actions and certain trade creditors of the Debtors in Possession.

The Debtors in Possession have moved for approval of a sale of substantially all of their assets, subject to overbid at an auction to be held in the Bankruptcy Court. The Debtors in Possession and the Committee agree that such a sale is in the best interest of the bankruptcy estates. The Debtors in Possession continue to market their assets to potentially interested buyers in an effort to obtain the highest and best price. A hearing in connection with the sale motion is set for September 19, 2005.

D. The Preliminary Injunction

The bankruptcy petitions filed by the Debtors in Possession automatically stayed all Ephedra Actions against the Debtors in Possession. On July 8, 2005, Judge Styn issued a 90-day stay of the JCCP Actions in their entirety, including claims against Third Parties. On August 23, 2005, Judge Rakoff entered a stipulation[5] and order staying all proceedings in the Ephedra Actions for a period of 90 days (the "MDL Stay Order"). The MDL Stay Order was expressly conditioned

---

3 The bankruptcy cases are being jointly administered under an order of the Bankruptcy Court entered on July 1, 2005.

4 Before the Debtors in Possession filed their bankruptcy petitions, an "Ad Hoc Committee" of creditors holding ephedra claims was formed. The Ad Hoc Committee comprised several plaintiffs' lawyers who together represented or otherwise spoke for "the vast majority" of ephedra claimants. The Committee was represented by the Brown Rudnick firm. When the official committee was formed, the United States Trustee appointed four ephedra plaintiffs, each of whom is represented on the Committee by his ephedra plaintiffs' counsel. The Committee itself is represented by the Brown Rudnick firm. Thus, in addition to its responsibility to the Metabolife creditor body generally, the Committee has substantial influence with respect to a significant majority of the ephedra plaintiffs.

5 The stipulation had been negotiated and signed by the Debtors in Possession, the Committee, and the Third Parties.

upon the entry of a similar stay order by the Bankruptcy Court, the only court with jurisdiction (via this Court) over all Ephedra Actions.

On August 26, 2005, the Debtors in Possession filed in the Bankruptcy Court a complaint and motion for preliminary injunction, enjoining all proceedings in all Ephedra Actions for a period of 90 days. As evidenced by their signatures on the MDL stipulation, the Committee and the Third Parties consented to this relief. The motion was granted by the Bankruptcy Court on September 7, 2005.

The primary cause for staying all Ephedra Actions against Third Parties is to allow the parties to concentrate their efforts on negotiating a global, consensual process for liquidating the claims asserted in the Ephedra Actions. On August 31, 2005, counsel for the Debtors in Possession, the Third Parties, the Committee, and other Ephedra Plaintiffs met in Irvine, California in furtherance of that goal. At this meeting, the parties agreed that the Debtors in Possession should petition to have all ephedra claims heard by this Court as part of the efforts to establish a global claims-resolution process. The parties also discussed procedures for filing proofs of claim in the Bankruptcy Court and a claims bar date. The parties are scheduled to meet again on September 21, 2005, in San Diego.

## III. THE RELIEF REQUESTED

The Debtors in Possession request a determination that all Ephedra Actions will be tried by this Court. Consistent with this determination and for efficiency purposes, the Debtors in Possession also request transfer of all Non-MDL Actions to this Court. The effect of this determination will also be that once the pretrial phase of the MDL Actions is over, trial of those actions will occur in this Court and not the various courts in which they were initiated. The Committee and the Third Parties agree that the transfer of the Non-MDL Actions to this Court is in the best interest of the bankruptcy estates.

Limitation on Request regarding the MDL Actions. None of the Ephedra Actions (more precisely, none that did not arise in the Southern District of New York) may proceed to trial in the MDL. Thus, the Debtors in Possession submit that this Court should centralize all the Ephedra Actions here. At the same time, of course, the MDL Actions are already being pre-tried in the

MDL (subject, of course, to the automatic stay under 11 U.S.C. § 362(a), which stays any and all actions against Metabolife and Alpine Health Products in the MDL). Thus, if this Petition is granted, all ephedra claims (including the Ephedra Actions) will be before this Court, with the MDL handling the pretrial work for the MDL Actions, and with the pretrial work for the other cases here before this Court (presumably with pretrial assistance from the Bankruptcy Court). This Petition does not answer the obvious question about further pretrial proceedings: should the pretrial work be done before one court or two, and if one, which one? The granting of this Petition has no effect on that question (and the order entered on the Petition should so provide).

## IV. LEGAL ARGUMENT

### A. This Court is the Appropriate Venue for Trial of the Ephedra Actions and Claims Under Section 157(b)(5)

All parties agree that the Ephedra Actions must be resolved as efficiently as possible. It is also critical that the plaintiffs be treated equitably and that inconsistent results be avoided. In addition, Congress has expressly directed that PITWD claims not be tried before the Bankruptcy Court and that this Court therefore determine in which district courts the ephedra claims should proceed. Having all ephedra claims heard by this Court will reduce administrative costs and promote the efficient resolution of the claims to the benefit of all creditors (not to mention the overall burden on the courts). Accordingly, this Court is the appropriate court to heard the ephedra claims under 28 U.S.C. § 157(b)(5).

The authority of the Bankruptcy Court is derived from this Court's jurisdiction under 28 U.S.C. §§ 1334 and 157. Section 1334 grants this Court original jurisdiction over cases and proceedings arising under the Bankruptcy Code, and proceedings arising in or related to bankruptcy cases. Cases arising under the Bankruptcy Code or arising in a bankruptcy case are "core" proceedings, and proceedings related to a bankruptcy cases are "non-core" proceedings. 28 U.S.C. § 157(b). Bankruptcy courts have the authority to issue final judgments in bankruptcy cases and core proceedings. 28 U.S.C. § 157(b).

Section 157(b)(2)(B) provides that the liquidation or estimation of contingent or unliquidated PITWD claims against the bankruptcy estate is a non-core proceeding. 28 U.S.C.

§ 157(b)(2)(B). Because the logic of section 157(b)(2) means that the bankruptcy judge cannot try the PITWD claims, section 157(b)(5) explains who will: either the district court for the district in which the case is pending — the "home" Court — or the district court for the district in which the claim arose:

> The district court shall order that personal injury tort and wrongful death claims be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5). Section 157(b)(5) directs the district court to determine the venue for the liquidation of PITWD claims. . The purpose of section 157(b)(5) is "to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1011 (4th Cir. 1986) (quoting the legislative history); In re Dow Corning Corp., 86 F.3d 482, 496-97 (6th Cir. 1996) (centralized adjudication under section 157(b)(5) "further[s] the prompt, fair, and complete resolution of all claims 'related to' bankruptcy proceedings, and harmonize[s] Section 1334(b)'s broad jurisdictional grant with the oft-stated goal of centralizing the administration of a bankruptcy estate."). In light of that policy of centralized administration and adjudication, courts have applied a presumption in favor of transferring PITWD claims to the home court — the district court for the district in which the bankruptcy case is pending, rather than transferring them to a number of different district courts. In re Twin Laboratories, Inc., 300 B.R. 836, 841 (S.D.N.Y. 2003).

The ephedra claims are PITWD claims against the estates of the Debtors in Possession and clearly are related to the bankruptcy cases. In addition, the claims against the Third Parties are also "related to" the bankruptcy cases. Pacor v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984) (adopting a broad definition of "related to" as any matter that could conceivably impact the bankruptcy estate). The ephedra claims involve common issues of law and fact relating to the design, manufacture, and advertisement of Metabolife's products, the labeling of the products, and the state of industry knowledge regarding the safety and efficacy of such products. Centralizing the ephedra claims (including the Third-Party aspects) in this Court will promote the efficient

administration and resolution of such claims, and eliminate the possibility of inconsistent results. Accordingly, this Court, as opposed to the district courts scattered around the country in the districts where the ephedra claims arose, is the one to hear the ephedra claims under 28 U.S.C. § 157(b)(5).

B. Transfer of the Ephedra Actions to this Court is Appropriate Under Section 157(b)(5).

Consistent with a determination that this Court shall hear the ephedra claims, the Debtors in Possession request transfer of all pending Ephedra Actions to this Court. Although section 157(b)(5) refers specifically to claims, the law authorizes district courts to transfer pending PITWD lawsuits. A.H. Robins, 788 F.2d at 1011; In re Pan Am Corp., 16 F.3d 513, 516 (2d Cir. 1994); Dow Corning, 86 F.3d at 496. PITWD lawsuits that may be transferred under section 157(b)(5) include those in which the debtor has been sued along with other non-debtor defendants. A.H. Robins, 788 F.2d at 1014; Dow Corning, 86 F.3d at 496-97. Transfer of such lawsuits is consistent with the policy favoring centralized administration of PITWD claims. Dow Corning, 86 F.3d at 497. As noted above, there is a presumption in favor of transfer to the district court for the district in which the bankruptcy case is pending. Twin Laboratories, 300 B.R. at 841.

Here, due to the cost of litigating the Ephedra Actions, the financial condition of the Debtors in Possession, and the prospects for a consensual, streamlined alternative process, it is unlikely that the ephedra claims will go to trial. The immediate objective is to centralize the litigation in this Court so that a global process for resolving the claims can be established by the parties and approved by this Court and/or the Bankruptcy Court (and possibly by the MDL Court, if that is this Court's subsequent determination) as part of a chapter 11 plan. The Committee and the Third Parties agree that the Ephedra Actions should be heard here. Therefore, formal transfer of the Non-MDL Actions to this Court is appropriate at this time.

Only this Court may serve as the ultimate centralized forum. Transferring PITWD claims to the MDL in the Southern District of New York, a multi-district litigation that is in neither the district court for the district in which the bankruptcy case is pending nor the district court for the district where the claims arose, is not permitted under section 157(b)(5). In re U.S. Lines Inc.,

216 F.3d 228, 235-36 (2d Cir. 2000). More generally, the multi-district litigation statute limits an MDL court's authority to pretrial management of the consolidated actions. 28 U.S.C. § 1407; an MDL court may not retain the consolidated actions for trial and must transfer the actions to the appropriate court for trial when the pretrial phase of the actions is over. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 34-40 (1998); Shah v. Pan American World Services, Inc., 148 F.3d 84, 90-91 (2d Cir. 1998).

## V. CONCLUSION

WHEREFORE, the Debtors in Possession respectfully request entry of an order (1) determining that personal-injury tort and wrongful-death claims, which cannot be tried in a bankruptcy court, shall be heard in this district court rather than in other district courts scattered around the country, (2) granting related and ancillary relief necessary for implementing that determination, and (3) granting such other and further relief as is just and equitable.

Dated: September 16, 2005

By: Robert R. Barnes

DAVID L. OSIAS
ROBERT R. BARNES
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
Attorneys for Debtors in Possession
METABOLIFE INTERNATIONAL, INC. and ALPINE HEALTH PRODUCTS, LLC